[Civ. No. 8834.   Third Dist.   Aug. 30, 1956.]

EVELYN KIPP MUELLER, Respondent, v. HERMAN W. MUELLER, Appellant.

Albert L. Wagner and Thompson & Thompson for Appellant.

Pierce & Brown for Respondent.

SCHOTTKY, J.—Evelyn Mueller and Herman Mueller were married in 1935. Three children were born to them, Joan in 1936, Gary in 1939, and Neil in 1952. Differences arose between them, and after more than 18 years of married life Mrs. Mueller filed an action for divorce. Following a trial she was granted an interlocutory decree of divorce upon the ground of extreme cruelty, was granted the custody of the children and was awarded alimony of $250 per month and support for the three children of $275 per month. The interlocutory decree also made a division of the property of the Muellers. Mr. Mueller's motion for a new trial was denied and he has appealed from said judgment.

Appellant husband does not challenge the decree insofar as it determines the marital status, the custody of the children or the amount awarded for their support, but appellant does make a vigorous attack upon the division of the property and upon the amount of alimony awarded respondent wife. Before discussing the specific contentions of appellant we shall give a brief summary of factual situation as shown by the record.

In 1926, when he was 19 years old, Mr. Mueller, a dental technician by trade, acquired a dental laboratory business for $6,500. He testified that at the time of his marriage in 1935 the value of all his property, including this business,

including money in the bank, and everything except his 1931 Pontiac automobile, was $7,000, so it is apparent that there was little, if any, increase in the value of appellant's property between the date he purchased the dental laboratory business and the date of his marriage to respondent.

Mrs. Mueller started to work in the laboratory immediately after the marriage, doing general office work, stenography, and bookkeeping, and continued to work full time until the first child was born. After the birth of Joan and Gary, in addition to taking care of two children she continued for 15 years to give one week a month to keeping the books.

During the marriage the size of the business increased greatly. Mr. Mueller employs five men in addition to himself. The laboratory does work for dentists as far north as Alturas, as far east as Reno, as far west as Fairfield, and as far south as Newman. The income from the business also increased tremendously.

At the time of the trial the property of appellant and respondent had increased to assets valued by the court at $128,883.89.

The court awarded respondent wife the following items of property:

The family home located at 2765 Land Park
  Drive, valued at .........................$26,750.00
Household furniture and furnishings valued at ..   5,000.00
A 1950 Cadillac automobile valued at ..........   1,800.00
Stocks valued at ............................   1,803.12
Cash in the sum of ...........................   6,092.82
Present cash value of certain life insurance
  policies ................................   9,569.60

The court awarded appellant husband the following:

Real property on Unsworth Avenue, Sacramento,
  equity valued at ..........................$    700.00
  (Gross value $8,500.00, but subject to lien of
  $7,800.00)
Cabin at Thirty-Mile Stone, valued at .........   4,500.00
A one-third interest in Hamilton Jewelers,
  valued at ...............................  33,449.68
Proprietary interest in General Dental Labora-
  tory including book value of tangible assets of
  $10,215.76; one Chevrolet automobile, $1,050.00;
  and good will, $25,000.00; less accounts pay-
  able, $1,184.28; note payable to Anglo Cali-
  fornia National Bank, $11,000.00; also less ac-
  crued taxes and payroll, $999.62; valued at..  23,081.86
Promissory note of Rose Hara valued at ........  10,896.33

The interlocutory decree provided further that "To equalize the respective distributing shares of the parties in and to the community property, defendant shall make, execute and deliver to plaintiff his promissory note in the sum of $10,301.16 payable in installments of not less than $100.00 per month, together with interest at the rate of five and one half per cent (5½%) per annum with unpaid balance due on or before seven (7) years from date," said note to be secured by a lien in favor of respondent upon the interest of appellant in Hamilton Jewelers.

Appellant's first contention is that the court erred in attempting to distribute the community property at the time of entering the interlocutory decree. He cites *Gudelj* v. *Gudelj*, 41 Cal.2d 202 [259 P.2d 656], and numerous other cases which lay down the rule that the portions of an interlocutory decree purporting to make an immediate distribution of property are erroneous. Respondent in reply does not question the rule but asserts that appellant should be estopped to make this contention because appellant's counsel at the trial "repeatedly asserted to the court that one of the objects of the trial would be to have the court make a present division of the community property." The record shows that prior to the taking of testimony there was a discussion between counsel for the respective parties and the court as to a division of the property, and while there was no specific mention of present or immediate distribution, the court could well have, and undoubtedly did, infer from the statements of counsel that the parties did desire an immediate division of the property. However, in the instant case it is stated in respondent's brief and not disputed by appellant in his reply brief that appellant has not delivered to respondent any of the property awarded to her in the interlocutory decree, and therefore the error complained of is one "which may and should be corrected by striking out the words of present disposition and inserting words to indicate that the disposition will be made in the final decree." (*Slavich* v. *Slavich*, 108 Cal.App.2d 451, 457 [239 P.2d 100].)

Appellant makes a number of contentions in his attack upon the division of the property. These contentions center upon the finding as to the proprietary interest in General Dental Laboratory, which, as hereinbefore set forth, was awarded to appellant. The dental laboratory business was found by the court to be community property and appellant points to the evidence that nine years prior to his marriage

he purchased said business for $6,500 and argues that the court erred in failing to find what part of the business was his separate property. Respondent in reply points to testimony of appellant that at the time of the marriage the value of his business was $6,500 and points also to the fact that no testimony was introduced to trace any part of the $6,500 from the date of the marriage, or to show whether it was represented in fixtures or furniture which must have become obsolete or which may have been left when the business moved. Respondent points also to the testimony of appellant that the success and value of the business was due entirely to his skill and ability and argues that under the circumstances shown by the record, whatever may have been the separate interest of appellant in said dental laboratory business, it was hopelessly commingled with community earnings. Respondent quotes the following from *Estate of Fellows*, 106 Cal.App. 681, at page 684 [289 P. 887]:

". . . it is incumbent upon the party contending for the separate estate to clarify the history of the property and to demonstrate, not to an exactitude, but to that degree of proof that clearly and convincingly satisfies an unprejudiced mind, that the property is separate property (*Freese* v. *Hibernia Sav. & Loan Soc., et al.*, 139 Cal. 392 [73 P. 172]). The burden of proof is on the claimant of the property as separate estate."

Also at page 683: "In the absence of evidence to the contrary it must be assumed that the horses were lost by death and that the tools, implements, etc., were discarded at some period during the twenty-seven years of married life, as useless."

The general rule is well expressed in 10 California Jurisprudence, 2d, pages 686, 687:

"If, however, one of the spouses invests his or her separate property in a business and conducts that business during marriage, the resulting profits are community and separate property in proportion to the amounts attributable to that spouse's personal efforts and to capital investment, respectively.

"What amount of the profits of a business conducted by one of the spouses is due to the personal efforts of that spouse and what amount is attributable to his or her capital investment must, in each case, be determined from the surrounding facts and circumstances."

■ In the instant case the record shows that respondent worked with appellant in said business after the marriage, that the profits from the business were used to buy a substantial home and other property including real property, stocks and an interest in the Hamilton Jewelry Company. It was stipulated in open court that all of this property was community property, which indicates strongly that the parties after their marriage regarded said dental laboratory business and the profits thereof as community property. While it is true that appellant paid $6,500 for the business nine years prior to the marriage, it is also true that the location of the business was changed after the marriage and that new furniture, fixtures and equipment were added. In the absence of any evidence in the record to trace any of the property that was in the business at the time of the marriage, and in view of the manner in which the proceeds of the business were invested and regarded by appellant and respondent, the court may well have concluded that any portion of the present value of the dental laboratory business that could be said to be traceable back to original investment was so intermingled with undisputed community property that it should be regarded as community property. ■ For as stated in 10 California Jurisprudence 2d, pages 702, 703:

"But the presumption in favor of community property applies to commingled property so that the burden of proof rests upon the party claiming a part as his separate property. Accordingly, if separate property or funds which have been commingled with community property cannot be traced, the entire mass is treated as community property."

Appellant next contends that the court erred in determining that the value of the dental laboratory should include an amount of $25,000 which the court designated as good will. As hereinbefore set forth, the court found that the value of the business was $23,081.86, and in determining that value listed the tangible assets at $10,215.76, the Chevrolet at $1,050, the good will at $25,000, and listed the liabilities as accounts payable, $1,184.28, notes payable, $11,000 and accrued expenses, $999.62.

Appellant argues that no good will attaches to a business which, appellant states, depends solely on his personal skill and ability. Appellant asserts that "goodwill has uniformly been held not to attach to a business or profession dependent upon the personal skill or ability of the owner." ■ How-

ever, we believe the general rule to be as stated in 24 American Jurisprudence 808, as follows:

"Frequently, it has been held that salable good will can exist only in commercial or trade enterprises and that it cannot arise in a professional business depending upon the personal skill and confidence in a particular person. This view seems traceable to the early and narrow definition given to good will by Lord Eldon. The better doctrine, however, appears to be that good will also exists in a professional practice or in a business which is founded upon personal skill or reputation. Where a person acquires a reputation for skill and learning in a particular profession, as, for instance, in that of a lawyer, a physician, or an editor, he often creates an intangible but valuable property by winning the confidence of his patrons and securing immunity from successful competition for their business, and it would seem to be well settled that this is a species of good will which may be the subject of transfer."

And in 38 Corpus Juris Secundum, Good Will, section 6, page 953, it is said:

"No rigid and unvarying rule for the determination of the value of good will has been laid down by the courts; each case must be determined on its own facts and circumstances. The determination of the question must, within proper limits, be left to the jury, whose conclusion must rest on evidence legitimately tending to establish value and supporting the verdict.

"In determining the value the profits are necessarily taken into account, and the value is usually estimated at so many years' purchase on the amount of such profits."

But even if we assume, as does appellant, that no good will attaches to a business which depends solely upon the personal skill and ability of an individual, it does not follow that no good will attached to the dental laboratory business here involved. For the record shows that this General Dental Laboratory business has been operated by appellant for more than 20 years; that appellant employs five men in addition to himself; that it does work for dentists as far north as Alturas, as far east as Reno, as far west as Fairfield and as far south as Newman; that the average net income of said business for the five-year period preceding the separation of appellant and respondent was approximately $12,500. We do not believe that the court was compelled to accept appellant's testimony that the business was dependent solely upon the personal skill and ability of appellant and that no

good will value attached to the business. We believe that the question of whether or not good will attached to the dental laboratory business was one of fact for the trial court to determine, and that the court's determination that good will did attach is supported by substantial evidence.

Appellant next contends that even if it be held that good will did attach to the dental laboratory business, the amount of $25,000 fixed by the court was grossly excessive.

The trial judge stated in his memorandum opinion:

". . . Concerning the good will value, the evidence ranged from no value whatsoever to over $34,500.00. Concededly this item can be an estimate only. The Court is convinced there is substantial value, but is not willing to put it as high as did plaintiff's accountant. It being an estimate only, though a substantial one, the Court has assigned the $25,000.00 figure."

The testimony of George Harbinson, a certified public accountant called as a witness by respondent, was to the effect that good will of the so-called personal services businesses can be determined using two formulas: (1) the establishing of all or a percentage of one year's average gross income, (2) by ascertaining the average net income over a period of years, subtracting the portion allocable to salary and by capitalizing the difference over a period of years. The figure which Mr. Harbinson arrived at in applying both of these methods was $34,578.15. Capitalization was for four years.

There was testimony of witnesses for appellant which in many respects was contrary to the testimony of Mr. Harbinson, but it is evident that the trial court believed Mr. Harbinson's testimony that good will did attach to the dental laboratory business, although the court placed a lesser value on the good will than did Mr. Harbinson.

While there is much force in the able and earnest argument of appellant that no good will should attach to the dental laboratory business and that the value placed on the good will by the court was excessive, we believe that both issues were questions of fact for the trial court to determine. It was for the trial court to weigh and evaluate the evidence and a careful study of the record convinces us that there is substantial evidence to support the findings of the trial court.

Appellant's final contention is that the sum of $250 per month awarded as alimony for respondent "is excessive and an abuse of discretion in view of the large value of the properties awarded to respondent and the numerous obligations imposed on appellant." He lists monthly payments that

he is required to make, totaling the sum of $1,152.00, as follows:

Alimony payable to plaintiff....................$250.00
Maintenance payable for children.............. 275.00
Regular premiums due on $40,000.00 life insurance 250.00
Installments on $10,301.00 note of defendant..... 100.00
Interest of 5½% on foregoing note required..... 56.00
Interest on $9,569.00 value policies, until paid.... 52.00
Interest on $11,000.00 Anglo California Bank note 50.00
Interest on $7,800.00 Anglo California Bank note 42.00
One-third interest on Hamilton Jewelry note..... 12.00
Maintenance of aged, needy mother, paid........ 65.00

It should be noted that the $11,000.00 note to the Anglo California Bank was hereinbefore listed as a liability of the dental laboratory business that was awarded to appellant. It should be noted further that appellant lists the insurance premiums that he must pay in order to keep his life insurance, but respondent was awarded only $9,569.60 as the present cash value of said policies and the court ordered that appellant should keep said policies in force until respondent received this amount. There is nothing to prevent appellant from paying said amount by receiving the cash surrender value of said policies or using other funds to pay respondent said sum of $9,569.60 if he chooses to keep said policies in force.

The matter of the allowance of alimony is within the sound discretion of the court. In view of the fact that the record shows that appellant has a net income from all sources of between $15,000 and $20,000 per year, we do not believe that the court abused its discretion in awarding respondent the sum of $250 per month as alimony.

It must be borne in mind that in the instant case the respondent was granted a divorce upon the ground of extreme cruelty. Subsection one of section 146 of our Civil Code provides:

"If the decree is rendered on the ground of adultery, incurable insanity or extreme cruelty, the community property shall be assigned to the respective parties in such proportions as the court, from all the facts of the case, and the condition of the parties may deem just."

The court had before it evidence as to all the property and income of appellant and respondent, and while it may be argued that it was the desire of the parties that the property

should be divided as nearly equally as possible, it was still the right and duty of the court to divide the property in "such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just." For as stated in *Lazar* v. *Superior Court*, 16 Cal.2d 617, at page 620 [107 P.2d 249]:

". . . A husband and wife may contract with one another concerning matters of property and support. (Civ. Code, §§ 158, 159; *Huntsberger* v. *Huntsberger*, 2 Cal.2d 655 [43 P.2d 258].) But such agreements are subject to close scrutiny by a court in a subsequent divorce action and may be approved, modified or rejected by such court in the exercise of the powers given it under sections 139 and 146 of the Civil Code."

We have hereinbefore held that the evidence was sufficient to support the court's determination that the dental laboratory business was community and also to support the valuation placed on the good will thereof. The court had a right to take into consideration the fact that appellant would receive and would continue to conduct the dental laboratory business from which the net income was in excess of $12,000 per year, and would also receive the one-third interest in the Hamilton Jewelry Company from which he would derive about $3,200 per year. The court also had a right to take into consideration the fact that respondent would receive the family home, furniture and furnishings, and automobile, valued at $33,550, and other property, from all of which there was little income. The respondent was awarded the custody of the three minor children aged 18, 15 and 2 years, and we do not believe that the court was required to make a division of the property and an award of alimony that would make it necessary for respondent, after 18 years of married life and with the responsibility of caring for the minor children, to seek outside employment. We believe that upon the record in the instant case, even if a substantial part of the dental laboratory business could be considered the separate property of appellant and even if the valuation placed upon the good will was excessive, the division of the property by the court could not be held to be an abuse of discretion. For the trial court had all of the evidence before it and made what it deemed to be a proper division, and we cannot conceive how appellant would gain by a retrial of the division of the property.

In view of the foregoing the interlocutory decree is modified by striking therefrom all words presently disposing of the community property and inserting words to the effect that

upon the entering of the final decree the parties are entitled to have assigned to them the portions of the community property mentioned in the decree. As so modified the judgment is affirmed as of the date of its entry. Respondent to recover costs.

Peek, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied September 25, 1956, and appellant's petition for a hearing by the Supreme Court was denied October 24, 1956.

---

*Assigned by Chairman of Judicial Council.