[Civ. No. 10239. Third Dist. Feb. 5, 1962.]

MARK W. BRAWMAN, Plaintiff and Respondent, v. BERTHA BRAWMAN, Defendant and Appellant.

Hilary H. Crawford and Hilary H. Crawford, Jr., for Defendant and Appellant.

Mark W. Brawman, in pro. per., and Ira M. Shadwell for Plaintiff and Respondent.

PIERCE, J.—This is an appeal from that portion of an interlocutory decree of divorce which denied appellant wife alimony, although granting her a divorce on the ground of extreme cruelty on her cross-complaint.

At the time of the decree the parties had been married 21 years. Respondent husband was then 53 years old. Although appellant's age was not stated, we would deduce from the testimony and duration of the marriage that she is, at least, in her middle forties. The couple have two daughters who, at the time of the trial, in November 1960, were 19 and 16 years of age, and they have a son, 7.

Respondent husband is a lawyer, had been in practice for one year when the couple were married. All their property was community. Accepting respondent's valuations, the property substantially exceeds $100,000 in value. This does not include the law practice accounts receivable or good will, on which no valuation was placed by the court in dividing the property.

Respondent during the 22 years has built up a lucrative law practice. In the four years next preceding the trial he had

averaged a net of $24,172 before taxes. In addition, an apartment house (awarded to respondent under the decree) brings in a substantial net income. What this was cannot be determined accurately from the record, because respondent in an informal declaration of income and expenses from this source had improperly included "capital repairs" as "ordinary expense." (See Int. Rev. Code, § 263 (a), Reg. 1, 263 a-1; 26 U.S.C.A. § 162, n. 69.) In 1958 the net income from the apartments was $2,522; in 1959, $2,744. It is fair to assume that respondent's net income averages well over $26,000 a year.

Respondent valued the apartment and law office real property at $36,000. A vendor's lien under a ranch contract of sale was worth $18,000, the balance due being evidenced by a note. The home was valued at from $20,000 to $25,000 and the household furniture at $4,000 to $5,000. Law office furniture and equipment was valued by respondent at $3,500; two automobiles at $2,774 and $980, respectively. $8,000 in the bank at the outset of the divorce had been spent by the husband, for a new automobile for himself, for capital expenditures on the apartments, and $1,114.47 was spent on the house. Other property—five Yreka lots, an interest in a Lake County lot, and a bond—had minimal value.

There were various life insurance policies, mostly "term"; those with a cash value aggregating $5,000.

This community property, by the decree, was divided as follows: The husband was awarded the law office and apartments, the law library, furniture and equipment, the interest in the Lake County lot, two life insurance policies with benefits of $20,000, another with benefits of $5,600. On none of these policies was respondent required to maintain appellant as beneficiary. (He could either cancel them or change beneficiary, or, if required to maintain them, it was for the benefit of the children, not the wife.) The only policies assigned to appellant were two, aggregating $5,000. On these, respondent was required to pay the premiums. The wife was also assigned a policy without cash value, if she desired, or was able, to keep up its premiums herself. The net result: Appellant has $5,000 of protection by insurance on respondent's life.

Respondent, *ipso facto*, also received the community law practice. The decree is silent regarding this.

Appellant was awarded the home and its furniture, the automobile she was driving, the contract of sale and promissory note on the ranch and the Yreka lots. And respondent

was also required to pay her $10,000, bearing 6 per cent interest, at the rate of $1,000 per year.

The comparison of values, accepting the figures testified to by respondent and his witnesses, shows that respondent received property worth $50,315, plus the law practice with its accounts receivable (not counted) and appellant received property valued by respondent at $68,743.16, plus the husband's obligation to pay her $10,000.

Custody of the oldest child, who was in college, was awarded to respondent. (She is now nearly 21.) Custody of the two younger children was awarded to appellant. Respondent was directed to pay appellant $200 per month each for the support of these two children.

The court's findings are that respondent's alleged grounds for divorce, extreme cruelty, are untrue and that appellant's allegations in her cross-complaint are true. The decree awards appellant the divorce upon the grounds of cruelty.*

The decree denied appellant alimony. This, as stated above, is the basis of the appeal.

Civil Code section 139 provides *inter alia*:

"In any interlocutory or final decree of divorce . . . the court may compel the party against whom the decree or judgment is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties . . . ."

This vests a broad discretion in the trial court. (See West's Ann. Civ. Code, § 139, notes 10, 14, 41, 67 and cases cited and digested thereunder.) Where discretion has been abused, however, appellate courts have reversed the lower court's holding, whether the abuse consisted of an excessive award (as was found in *Hall* v. *Hall*, 42 Cal.2d 435, 442 [267 P.2d 249]) or no award at all (as in *Webber* v. *Webber*, 33 Cal.2d 153 [199 P.2d 934]; *Arnold* v. *Arnold*, 76 Cal.App.2d 877 [174 P.2d 674]). The reason for the rule has been expressed to be: "That the Legislature has admonished the trial court to make a *"suitable* allowance."

The discretion of the trial court "is not arbitrary

---

*Respondent, disclaiming any desire to impeach the findings, nevertheless calls attention to oral observations by the trial court in contradiction of its decree and findings. Since the court DID award the divorce to the wife, and that part of the decree is final we are not constrained to notice this beyond the assertion that the record abundantly supports the court's findings.

. . . 'it must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the husband. . . . In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered.' "

 In *Webber* v. *Webber, supra,* the parties had been married for 36 years, the 53-year-old wife was in fairly good health, but of a nervous disposition, and had not worked outside the home. The husband was a laborer, earning $40 to $47 per week. The trial court at the outset had announced it did not intend to make any alimony award and it did not do so in the decree. It was held, on appeal, that the wife had not had a fair trial; that the court, under Civil Code section 139 was obligated to make a suitable allowance to the wife for her support " *'having regard to the circumstances of the parties respectively.'* "

The Supreme Court, studying the record, noted a predisposition in the trial court against the allowance of alimony, frankly asserted at the outset of the trial, and found that this was in contravention of the clear declaration of the Legislature and policy of the law. The court says on pages 157-158 (quoting from *Arnold* v. *Arnold,* 76 Cal.App.2d 877 [174 P.2d 674]):

". . . 'The theory of this requirement is that the husband entered upon an obligation which bound him to support his wife during the period of their joint lives, that by his own wrong he had forced her to sever the relation which enabled her to compel the performance of this duty, and that he is required to make compensation for the offense committed by him which has deprived her of the benefit of the obligation.' "

This rule collides head-on with the rule applied here by the trial judge as expressed by him in his oral opinion delivered from the bench at the conclusion of the trial:

". . . [B]y and large the support of a wife is a consideration which the husband pays in exchange for the affection of the wife as a marital partner, and her services as mistress of his home. *If that service is not to be rendered, this court, at least, does not believe it should be paid for.* Therefore, in this case, I am not very favorably disposed toward the granting of alimony and any financial arrangement [which] has that effect, whether or not it have that form, will be chiefly

compensation to the wife for her services she will still be rendering; namely, that of taking care of the children." (Emphasis added.)

Later, in response to the argument by the wife's attorney that she was entitled to alimony, the court replied: "Can you give me any reason why the wife should get paid for what she is not doing?" And still later the court observed: "You are probably aware of the fact that these days alimony is increasingly less common, that the award of alimony has been highly criticized throughout the state, and as the employment of women increases, it is becoming increasingly an obsolete custom." The trial court's understanding and holding here contravenes established law. Where the facts justify it, a "suitable allowance . . . having regard for the circumstances of the respective parties" is mandatory. Turning to a further consideration of the facts to determine whether this obligation has been fulfilled here we note the following:

The parties are middle-aged and had been married for over 20 years when respondent permanently left appellant and took up separate residence. Appellant, although she stated herself to be in good health at the time of the trial, had a history of hospitalization and surgery for a thyroid condition for which she had been incapacitated, at least partially, for a year. She had worked briefly as a legal secretary 20 years ago, but she had not worked at this or any other outside occupation after the commencement of the marriage, all during which she maintained the home and had taken care of the children. She had no other accomplishment except that she excelled (so respondent agreed) as a cook. Success to the husband in his law practice had brought to the couple the comforts of life commensurate with his substantial earnings. Where, as here, dissolution of the marriage is for the husband's fault, the proposition that he shall continue to enjoy all the fruits of success while the wife shall be reduced to straitened living, does not commend itself to this court as fair treatment.

Under such circumstances justice and the law demand the continued support of the wife. The Legislature has decreed that the amount of the award therefor should reflect comparatively the circumstances of the parties. Respondent urges that appellant was awarded a greater share of the community property in lieu of alimony; and he points to the allowance of $10,000 (payable at $1,000 per year, plus interest) required by the court to be paid by the husband to the wife.

Actually, appellant *did not* receive the preferential share of common property which respondent claims. The law business was a substantial part of the community, but was given no valuation by the judge who, in declaring the parties to have been "marital partners" evidently did not feel that the partnership relationship covered the law business. Where, as here, respondent had commenced the practice of law just one year before his marriage and had built up a lucrative law business by his industry and professional ability, a practice producing $24,000 a year net, the business is community property and it has a substantial value. (See *Mueller* v. *Mueller*, 144 Cal.App.2d 245 [301 P.2d 90].) In considering this value, consideration must be given to the fact that, on divorce and dissolution of the community, a professional practice goes automatically to the spouse licensed to practice it. He is not selling out or liquidating, but continuing in business. Effectually, it is the case of a silent partner withdrawing from a going business. And, if such partner is to receive fair compensation for her share, on her enforced retirement, it should be so evaluated. The appeal here, however, is not from the community property division. Therefore, discussion of the value of the law business has application only to respondent's contention that denial of alimony is to be justified on the basis of the court's generosity in the award of property to the wife. Considering the value of the law practice for this limited purpose, it becomes clear that the wife here received not more, but less, in value of the community property than did the husband.

In *Hall* v. *Hall, supra,* the Supreme Court, in discussing the question of alimony award compared and contrasted the circumstances of the husband and wife as those circumstances would exist after the decree. The same method was adopted in *Huntington* v. *Huntington*, 120 Cal.App.2d 705, 713-714 [262 P.2d 104]. We will apply it here:

Appellant will have a home and household furniture, no more than adequate to house herself and her two children, and she has a 4-year-old automobile. Neither is income producing. She may be able to liquidate the Yreka lots for $500 and she has a $25 bond. She will receive $1,000 a year with 6 per cent interest for 10 years from respondent and $1,000 a year with interest for 18 years on the promissory note, which will exhaust that asset. Thus at age 65 or thereabouts she will be wholly without assets except a 30 or 40-year-old house. Her current income is not only insufficient to maintain her accus-

tomed standard of living, it is inadequate for even her bare support. (Respondent, in his brief, computes the child support payments as though they are the income of the wife. Obviously, they are not, and should not be so regarded. (*Arnold* v. *Arnold, supra.*) Since appellant must legally apply such payments to feed, clothe and educate them in a manner befitting the children of a leading attorney of the community, she cannot legally divert the money for her own benefit.) She will have to seek and obtain employment to meet the necessities of living. This, considering her obligation to care for, guide and supervise a teenage daughter and an 8-year-old son, and further considering the accustomed antedivorce standard of living of this family, she should not be required to do. (*Pope* v. *Pope*, 102 Cal.App.2d 353, 370-371 [227 P.2d 867].) Moreover, since the absolute denial of alimony here would, if it became final, preclude any award hereafter, the future predicament of this woman must be considered. (*Nelson* v. *Nelson*, 96 Cal.App.2d 208, 209 [215 P.2d 47].) In 10 years appellant's meager income will be cut in half; in 18 years it will be cut off entirely.

It is stated in *Arnold* v. *Arnold, supra*, at page 886:

"... A woman past middle age can seldom rehabilitate herself after a break in marriage relations and the courts may properly safeguard her financial future where the marriage is dissolved for the offense of the husband. (*Farrar* v. *Farrar*, 41 Cal.App. 452, 457 [182 P. 989].)

Compare Mr. Brawman's circumstances. With his income from his law practice and from the apartments he will be netting before taxes over $26,000 a year, from which he will have to pay for about three years $4,800 a year for support of the children (taking them as income tax deductions). This sum will be reduced to $2,400, when the second daughter, now about 18, reaches 21 years of age. For 10 years his annual income will also be reduced by the $1,000, plus interest, he will pay Mrs. Brawman. Mandatory insurance premium payments reduce his retained income by only $144.86 per year. His net income, before taxes, will approximate $20,000 a year.

This is clearly an unfair distribution of income. The wife has not received a "suitable allowance" for her support and maintenance "having regard for the circumstances of the respective parties." (Civ. Code, § 139.) Denial of support to the wife under the facts of this case was an arbitrary expression of the trial court's predilections against any allowance of alimony after dissolution of marriage.

The portion of the judgment appealed from is reversed and the cause remanded for further proceedings in accordance with the rule herein stated.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied March 1, 1962, and respondent's petition for a hearing by the Supreme Court was denied April 3, 1962.