[Civ. No. 34078. First Dist., Div. One. Oct. 22, 1974.]

In re the Marriage of WILLIAM THEODORE and
IRIS ANN FOSTER.
WILLIAM THEODORE FOSTER, Appellant, v.
IRIS ANN FOSTER, Respondent.

**COUNSEL**

Barry Wood for Appellant.

Rawles, Golden, Hinkle & Finnegan and John Golden for Respondent.

**OPINION**

**MOLINARI, P. J.**—In this dissolution of marriage proceeding the primary question presented on appeal is whether the trial court used a proper method of evaluating the goodwill attributable to appellant's medical practice. It is conceded by appellant that any goodwill attributable to his medi-

cal practice is community property.[1] A determination by us that a proper evaluation method was used by the trial court requires that we decide whether the evidence is sufficient to support the lower court's evaluation.

Commencing in August 1966 appellant became associated with Dr. Smalley in a medical practice in Willits, California, at a compensation which included a monthly salary of $1,750 and an additional sum of $100 per month for car expense. This association continued for approximately nine months when appellant and Dr. Smalley formed a partnership for the practice of general medicine. On January 1, 1971, the partnership was incorporated as the "Willits Medical Group." The corporation was dissolved in August 1971 and Dr. Smalley and appellant went their separate ways, each to pursue an individual medical practice in Willits. On June 1, 1972, appellant opened a new office location. It contained 3,500 square feet occupied by four examination rooms, one baby room, one minor surgery room, one physical therapy room, one consultation room, one waiting room and a visitor's office. Appellant regularly employed 4 persons and worked between 50 and 60 hours per week. He made hospital calls every day and sometimes twice a day.

The testimony concerning the value of the goodwill of the medical practice was conflicting. Donald Heller, an accountant whose qualifications as an expert were stipulated to, testified that he had examined appellant's financial records and that in his opinion the value of the goodwill was $27,000. On direct examination Heller was asked to explain "some of the ways available to determine the fair value of goodwill of a medical practitioner." Heller stated that "One way is to take the net income for the year and subtract from that what a comparable employer [*sic*] would have as a salary in a comparable situation, and take that difference, and multiply that by a factor anywhere from, one year factor of anywhere from two to ten." He testified further that "You can take the net earnings of the business, one year's net earnings of the business. You can take two years net earnings of the business. You can take three years net earnings of the business. You can take three months charges to accounts receivable. You can take three months receipts on accounts receivable."

Heller testified further that there is no definite method by which the value of goodwill can be determined and that it is "always just somebody's

---

[1] A marriage purportedly entered into between appellant and respondent in Texas on September 4, 1965, is conceded to be a nullity because respondent's prior marriage had not been legally terminated. This situation was known to and discussed by appellant and respondent and they agreed to cohabit and to nevertheless regard themselves as husband and wife. The parties separated at the end of July in 1972.

opinion." When queried as to how he arrived at the figure of $27,000 he stated he applied "these methods" and took into consideration other factors such as the facts that Willits is a small town and appellant's office was near a hospital. Finally, he stated as follows: "Mathematically I took the approximation of three months received on account, latest three months that I had, because some of the other ways I felt were resulted in a figure that was too high."

On cross-examination Heller was asked what he meant by "goodwill." He replied: "Goodwill is value that somebody has built up. . . . it is part of the business; it is separate from the accounts receivable, and is in addition thereto." When asked if he was representing to the court that appellant could find a buyer who would pay $27,000 in addition to the other assets, Heller said "not necessarily." He explained that if appellant continued in his practice, his business had a value of $27,000 in excess of tangible items, but that it depended on how long appellant let the practice "sit," whether he abandoned it, or whether he passed away. He said he had no opinion as to whether appellant could obtain $27,000 for goodwill from a buyer, but stated he would receive an amount for goodwill if he sold the practice. Heller reiterated that the $27,000 valuation for goodwill did not mean that appellant could obtain that sum by selling the medical practice and that he had no opinion as to the amount of money that could be obtained for goodwill upon a sale.

Appellant testified that the goodwill of his medical practice had no value as of July 31, 1972, the date that the parties separated. The trial court found that as of this date the goodwill of appellant's medical practice had a value of $27,000.

The specific issues tendered on this appeal are whether a proper method of evaluating goodwill was used by Heller and whether the evidence is sufficient to support a finding that the value of the goodwill of appellant's medical practice was the sum of $27,000.

In considering these issues we first observe that the parties apparently concede that a medical practice has a goodwill and that such goodwill has a value. The proceedings below were tried on the theory that appellant's medical practice had a goodwill and the sole issue with respect to this aspect of the case was confined to whether the goodwill of appellant's medical practice had a value, and, if so, what that value was.

"The 'goodwill' of a business is the expectation of continued public patronage." (Bus. & Prof. Code, § 14100.) The following is a more complete definition: It is " 'the advantage or benefit which is acquired by an

establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances, or necessities, or even from ancient partialities or prejudices. [Citation.] . . . it is the probability that the old customers will resort to the old place. It is the probability that the business will continue in the future as in the past, adding to the profits of the concern and contributing to the means of meeting its engagements as they come in.' " (*In re Lyons,* 27 Cal.App.2d 293, 297 [81 P.2d 190]; see *Piedmont Publishing Co.* v. *Rogers,* 193 Cal.App.2d 171, 186 [14 Cal.Rptr. 133].)    ■    Goodwill is property of an intangible nature and is a thing of value. (*Burton* v. *Burton,* 161 Cal.App.2d 572, 576 [326 P.2d 855].) When it is sold it is not the patronage of the general public which is sold, but that patronage which has become an asset of the business. (*Harrison* v. *Cook,* 213 Cal.App.2d 527, 530 [29 Cal.Rptr. 269].)[2]

■    In a divorce case it is well established that the goodwill of a husband's professional practice as a sole practitioner is taken into consideration in determining the community property award to the wife. (*In re Marriage of Fortier, supra,* 34 Cal.App.3d 384, 388-389; *Golden* v. *Golden, supra,* 270 Cal.App.2d 401, 405 [75 Cal.Rptr. 735]; *Brawman* v. *Brawman, supra,* 199 Cal.App.2d 876, 882 [19 Cal.Rptr. 106]; see *Fritschi* v. *Teed,* 213 Cal.App.2d 718, 726 [29 Cal.Rptr. 114].) Since a community interest can only be acquired during the time of the marriage the value of the goodwill must exist at the time of the dissolution and that value must be established without dependence on the potential or continuing net income of the professional spouse. (*In re Marriage of Fortier, supra,* 34 Cal.App.3d 384, 388.)

■    Adverting to the question of valuation, we observe the rule that

---

[2]Goodwill may exist in a professional practice or in a busines which is founded upon personal skill or reputation. (*Smith* v. *Bull,* 50 Cal.2d 294, 302 [325 P.2d 463]; *Mueller* v. *Mueller,* 144 Cal.App.2d 245, 251 [301 P.2d 90].) Accordingly, goodwill has been found to exist in a dental laboratory business (*Mueller* v. *Mueller, supra,* at pp. 251-252); in an advertising partnership (*Smith* v. *Bull, supra,* at p. 302); in a medical practice (*In re Marriage of Fortier,* 34 Cal.App.3d 384, 388-389 [109 Cal. Rptr. 915]; *Golden* v. *Golden,* 270 Cal.App.2d 401, 405 [75 Cal.Rptr. 735]; *Crutchett* v. *Lawton,* 139 Cal.App. 411, 412-413 [33 P.2d 839]); and in the law practice of a sole practitioner (*Brawman* v. *Brawman,* 199 Cal.App.2d 876, 877, 882 [19 Cal.Rptr. 106]; but see *Lyon* v. *Lyon,* 246 Cal.App.2d 519, 524-527 [54 Cal.Rptr. 829] where it was held that upon the *dissolution* of a law partnership no allowance can be made for goodwill where the retiring partner takes with him the files and documents of clients who so requested and he continues to represent them in competition with the firm).

when goodwill attaches to a business its value is a question of fact. (*Burton* v. *Burton, supra,* 161 Cal.App.2d 572, 576-577; *Mueller* v. *Mueller, supra,* 144 Cal.App.2d 245, 251-252.) The courts have not laid down rigid and unvarying rules for the determination of the value of goodwill but have indicated that each case must be determined on its own facts and circumstances and the evidence must be such as legitimately establishes value. (*Burton* v. *Burton, supra,* at p. 577; *Mueller* v. *Mueller, supra,* at p. 251; see *In re Marriage of Fortier, supra,* 34 Cal.App.3d 384, 389.) In establishing value of goodwill opinion evidence is admissible but is not conclusive. (*Burton* v. *Burton, supra,* at p. 576.) The trier of fact may also take into consideration the situation of the business premises, the amount of patronage, the personality of the parties engaged in the business, the length of time the business has been established, and the habit of its customers in continuing to patronize the business. (See *Burton* v. *Burton, supra,* at pp. 576-577.)

In *Fortier* we find the following statement: ". . . the value of community goodwill is simply the market value at which the goodwill could be sold upon dissolution of the marriage, taking into consideration the expectancy of the continuity of the practice." (34 Cal.App.3d 384, 388.) This definition appears to restrict the value of goodwill in a dissolution of marriage proceeding to the value which a willing buyer would pay for the community goodwill at the dissolution of the marriage. Such a limitation would require that there be adduced evidence to this effect. We do not perceive such a rule to be the thrust of *Fortier*. In that case there was evidence that the husband had paid between $2,500 and $3,000 for goodwill when he purchased his associate's interest in 1965; that in 1969 when he took in an associate the amount of $10,963 was agreed upon as the amount the new associate would forego for a period of time before he became an equal partner; and that when the marriage was dissolved in 1971 the value of the community goodwill was testified by experts and the parties to range from nothing to $300,000. The trial court found the aforementioned amount of $10,963 to be the value of the goodwill of the business.[3] In affirming the judgment the reviewing court observed that ". . . where there has been an arm's length sale of such interest (goodwill) and there is no showing of collusion or unfair dealing to the detriment of an interested party, the price paid can be said to be *persuasive evidence* of the value of that goodwill." (Italics added.) (34 Cal.App.3d at p. 388.) Accordingly, the trial court concluded that ". . . it cannot be said that where respondent [the husband] was willing to pay, and did pay, between $2,500 and $3,000 for the good-

---

[3]The trial court apparently treated said sum of $10,963 as being the equivalent of a price paid for goodwill.

will in 1965 there was no evidence to support the court's conclusion that $10,963 was not reasonable." (34 Cal.App.3d at pp. 389-390.) There is nothing in *Fortier* therefore, which restricts the method of evaluating goodwill to market value.

The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage. As observed in *Golden*, ". . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business."[4] (270 Cal.App.2d 401, 405.)

In sum we conclude the applicable rule in evaluating community goodwill to be that such goodwill may not be valued by any method that takes into account the post-marital efforts of either spouse but that a proper means of arriving at the value of such goodwill contemplates any legitimate method of evaluation that measures its present value by taking into account some past result. Insofar as the professional practice is concerned it is assumed that it will continue in the future.

In the present case respondent's expert witness testified as to the methods that could be used in computing the value of goodwill and as to some of the considerations which would enter into the valuation of appellant's medical practice. Heller stated he used one of these methods in arriving at his valuation of the goodwill. This method of valuation did not take into account the future efforts of appellant or his future earnings, but took into account past earnings and projected these into the present value of the goodwill, taking into consideration the expectancy of the continuity of the medical practice. This formula of valuation was accepted by the court and Heller's testimony provided sufficient evidence to support the sum of $27,000 as the valuation of the goodwill.

Appellant argues that the record is unclear as to the method of valuation

---

[4]The statement is quoted and cited with approval in *Fortier*. (34 Cal.App.3d 384, 389, fn. 4.)

used by Heller. We do not perceive the lack of clarity urged by appellant. In any event, assuming that it was not exactly clear which of the various methods were used by him in arriving at the $27,000 valuation, it is clear that at least one of these methods was utilized. Heller stated that the traditional methods of valuation produced a valuation higher than $27,000 and that he used a method giving a lower figure because he felt it was more appropriate.

The appeal from the order denying a new trial is dismissed;[5] the judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied November 14, 1974, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1974.

---

[5]An order denying a motion for new trial is nonappealable. (Code Civ. Proc., § 904.1; *Litvinuk* v. *Litvinuk*, 27 Cal.2d 38, 42 [162 P.2d 8]; *Alvarez* v. *Felker Mfg. Co.*, 230 Cal.App.2d 987, 991, fn. 1 [41 Cal.Rptr. 514].)