[No. 1801-2.    Division Two.    December 6, 1976.]

*In the Matter of the Marriage of* R. M. LUKENS, *Petitioner,* and D. L. LUKENS, *Respondent.*

*James H. Morton, Ken Fielding,* and *Bonneville, Viert & Morton,* for petitioner.

*Edward M. Lane* and *Johnson, Lane & Gallagher,* for respondent.

REED, J.—On March 14, 1975, Roberta M. Lukens was granted a dissolution of her marriage to Dr. David L. Lukens. Dr. Lukens appeals from those portions of the Pierce County decree that pertain to: (1) the inclusion of an intangible element of professional goodwill as an asset of his medical practice; and (2) the valuation and division of this intangible as part of the property distribution. We affirm.

The parties were married in August 1965, at which time Mrs. Lukens was teaching school and Dr. Lukens was entering his final year of osteopathic school in Philadelphia. Upon completion of his education Dr. Lukens commenced a year's internship in Grand Rapids, Michigan, and Mrs. Lukens secured employment as personnel manager in a department store. In 1967 the Lukens moved to Tacoma, where they temporarily resided with her parents. Dr. Lukens obtained his license to practice in December of 1967 and immediately associated with another osteopath under a salary-bonus arrangement. Mrs. Lukens resumed school teaching in September of 1968 and remained with the Uni-

versity Place School District until June 1970. In 1972 Dr. Lukens established his own practice, which he still maintained and operated at the time of the dissolution. The new practice was financed with a loan, which was repaid in 1973 by withdrawing $21,000 from the parties' joint savings account. Mrs. Lukens also participated in the organization of the new practice: she maintained the personnel records, established office procedures, including a bookkeeping system, hired the office workers, and aided in the design of the office. She continued to help with the office administration until she filed for a dissolution in 1974.

Dr. Lukens enjoys a large clientele and his practice has been very successful, averaging over $50,000 net income per year. He employs a registered nurse, a full-time secretary-receptionist, and a part-time office worker. The trial court found that his practice consists of physical assets including an X-ray machine valued at $16,000, accounts receivable valued at $33,600, and cash in the amount of $6,200. The trial court also found an element of professional goodwill and valued it at $60,000, bringing the total worth of his practice to $115,800. It is the $60,000 item that is the subject of this appeal.

Dr. Lukens contends that professional goodwill has no market value and that it is therefore not subject to disposition in a dissolution proceeding. The questions presented in this appeal require consideration of the nature of goodwill, and an examination of the means by which goodwill contributes to the economic profits of the professional practice.

Goodwill is property of an intangible nature and is commonly defined as the expectation of continued public patronage. *In re Marriage of Foster*, 42 Cal. App. 3d 577, 117 Cal. Rptr. 49 (1974). Justice Story, in an oft-quoted definition, characterized goodwill as

a benefit or advantage "which is acquired by an establishment beyond the mere value of the capital, stock, funds or property employed therein, in consequence of the general public patronage and encouragement, which it receives from constant or habitual customers on account of its local position, or common celebrity, or repu-

tation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

J. Crane & A. Bromberg, *Law of Partnership* § 84 (1968) quoting from J. Story, *Partnership* § 99 (3d ed. 1850). *See also* 14 S. Williston, *A Treatise on Law of Contracts* § 1640, at 116 (3d ed. 1972); *In re Glant's Estate*, 57 Wn.2d 309, 356 P.2d 707 (1960); *Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 113 P.2d 845 (1941); *Stanton v. Zercher*, 101 Wash. 383, 172 P. 559 (1918).

Goodwill is most often associated with commercial ventures. Nevertheless, it is recognized that the practice of an attorney, physician, or other professional person may include such an element, even though the goodwill in such instances is personal in nature and not a readily marketable commodity. *See, e.g.,* 6A A. Corbin, *Corbin on Contracts* § 1393 (1962); *Lockhart v. Lockhart*, 145 Wash. 210, 259 P. 385 (1927); *In re Marriage of Lopez,* 38 Cal. App. 3d 93, 113 Cal. Rptr. 58 (1974); *Golden v. Golden*, 270 Cal. App. 2d 401, 75 Cal. Rptr. 735 (1969). Factors contributing to professional goodwill include the practitioner's age, health, past earning power, reputation in the community for judgment, skill, and knowledge, and his comparative professional success. *In re Marriage of Lopez, supra* at 68.

The question of whether professional goodwill is an asset that is properly before the court in a dissolution proceeding has received limited discussion. In *Nail v. Nail*, 486 S.W.2d 761, 52 A.L.R.3d 1338 (Tex. 1972), it was recognized that professional goodwill is not fixed or localized, but rather attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. *Nail* found that goodwill does not possess value or constitute an asset separate and apart from the professional and his ability to practice his profession, and that in the event of his death or retirement, it would be extinguished. The Texas court went on to conclude that the goodwill of a medical practitioner was an expectancy wholly dependent upon the continuation of existing circumstances, that it was

without value because there was no assurance it would prove beneficial in the future, and that it was not property subject to division under a divorce decree. *Nail v. Nail, supra* at 764.

A different line of authority has developed in California. In *In re Marriage of Foster, supra,* the court did not adopt the rationale of *Nail,* but instead focused on the fact that subsequent to a marriage dissolution the professional practice continues to benefit from the same goodwill that it possessed during the marriage. Recognizing that the goodwill remains intact and is not affected by a marriage dissolution, the court found that it was an asset whose value should be accounted for in the property division. *See also In re Marriage of Lopez, supra; Golden v. Golden, supra.*

In the instant case, Dr. Lukens takes the position adopted in *Nail* and argues that as a sole practitioner any goodwill associated with his practice is personal, unmarketable, and without value. He emphasizes the personal nature of his goodwill by pointing out that all income produced in his practice is derived solely from his individual labor, and that if he should cease to practice, his goodwill will not generate any income on its own.

While we do not disagree with the doctor's argument that his goodwill is not readily salable, we do not think it follows a fortiori that his goodwill is without value. The fallacy of Dr. Luken's argument is demonstrated by resort to common experience. The recently graduated young professional who goes into business for himself may reasonably expect the initial years of his practice to be less profitable, this expectation being attributed in part to a lack of goodwill or "that the old customers will resort to the old place." *See, e.g., In re Marriage of Foster, supra* at 52. Similarly, if Dr. Lukens were to abandon his Tacoma practice and relocate as a sole practitioner in another state, he also should anticipate a shortage of business, even though his practice consists of the same physical assets and he presumably possesses the same degree of skill. Again the difference must be attributed to his not having developed

in his new locale a reputation as to skill, efficiency, and the other elements comprising goodwill.

■ Accordingly we do not think the dispositive factor is whether Dr. Lukens can sell his goodwill. His goodwill has value despite its unmarketability, and so long as he maintains his osteopathic practice in Tacoma he will continue to receive a return on the goodwill associated with his name. The fact that professional goodwill may be elusive, intangible, and difficult to evaluate is not a proper reason to ignore its existence in a proper case, *In re Marriage of Lopez, supra* at 67, and once its existence and value are ascertained, professional goodwill along with the other assets of the professional practice, should be included in a property division. *See Berg v. Berg*, 72 Wn.2d 532, 434 P.2d 1 (1967).

■ Although there appears to be no definitive formula for ascertaining the value of goodwill, *In re Marriage of Foster, supra* at 53, *Levene v. Salem*, 191 Ore. 182, 229 P.2d 255 (1951), it nevertheless does seem settled that the question is one of fact and that opinion evidence is admissible though not conclusive. *Burton v. Burton*, 161 Cal. App. 2d 572, 326 P.2d 855 (1958); *In re Marriage of Foster, supra.* The value of goodwill, which is to be determined at the time of dissolution, is not synonymous with the spouse's expectation of future earnings. *In re Marriage of Fortier*, 34 Cal. App. 3d 384, 109 Cal. Rptr. 915 (1973).[1] Goodwill should be measured by arriving at a present value based upon past results and not by accounting for the post-marital efforts of the professional spouse. *In re Marriage of Foster, supra* at 54. Factors to be considered include the length of time the professional has been practicing, his comparative success, his age and health, and particularly

---

[1]In *In re Marriage of Fortier*, 34 Cal. App. 3d 384, 109 Cal. Rptr. 915 (1973), the court found that the value of goodwill was its marketable value. *Fortier* can be distinguished on its facts inasmuch as the price for the goodwill in that case had been established pursuant to a buy-sell agreement. As *In re Marriage of Foster*, 42 Cal. App. 3d 577, 117 Cal. Rptr. 49, 53 (1974) states, the price paid is persuasive evidence of the value of goodwill, but there is nothing in *Fortier* restricting the method of valuation to market value.

the past profits of the practice, which would reflect any income previously generated by his goodwill. Additionally, because goodwill does not exist separately but is incidental to the other assets of the business, attention should be given to the physical and fixed resources of the practice. *See In re Marriage of Lopez, supra* at 68; *Levene v. Salem, supra* at 263.

In the instant case there was conflicting testimony on the value of Dr. Luken's goodwill. Mr. Fisher, who testified on behalf of the doctor concluded Dr. Luken's osteopathic practice had no goodwill of any value, his theory being that all income was derived solely from the doctor's personal efforts. On the other hand, Mrs. Luken's expert, Mr. Algeo, testified to three different methods for calculating goodwill. Each method was based on the past earnings of Dr. Lukens and by these formulas his goodwill was computed to have a value of $105,507, $93,008, and $84,188, respectively. In addition to this opinion evidence, the record indicates that Dr. Lukens is a young man and can look forward to many more years of practice, that his practice has been financially profitable, that there is little likelihood of prospective competition which would deplete his number of patients, that many of his patients have regularly sought his services since he began his practice in Tacoma, and that his office has a good location. Furthermore, there is evidence that the doctor possesses a good reputation among the medical community.

The trial judge concluded that Dr. Lukens' practice included an element of professional goodwill, which he valued at $60,000. Although the trial judge reached this conclusion by application of what he labeled a "backwards alimony approach," his finding must nevertheless be sustained for two reasons: first, it is consistent with our holding that professional goodwill is property which is subject to disposition in a marriage dissolution; and second, the value of $60,000 is supported by the evidence introduced at trial. Even though the trial court may have given an erroneous or insufficient reason for its conclusion, we will not

reverse the decree when it is sustainable upon any ground within the pleadings and proof. *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 446 P.2d 200 (1968).

■ Lastly, Dr. Lukens argues on appeal that the testimony of Mr. Algeo was inadmissible because the witness was not asked a proper hypothetical question. Counsel's objection at trial was couched in terms of goodwill in a professional practice having no value. The failure of counsel to object at trial on the basis that the hypothetical question was not properly based upon the facts of record precludes him from raising that issue on appeal. *Spinelli v. Economy Stations, Inc.,* 71 Wn.2d 503, 429 P.2d 240 (1967).

The judgment is affirmed.

PETRIE, C.J., and HALE, J. Pro Tem., concur.

Petition for rehearing denied January 4, 1977.

Review denied by Supreme Court May 25, 1977.