# IN RE: THE MARRIAGE OF MOEBUS v MOEBUS
## Case No. 86-16224 FC 30
Eleventh Judicial Circuit, Dade County
April 28, 1987

## OPINION OF THE COURT

MURRAY GOLDMAN, Circuit Judge.

THIS CAUSE came on before me for non-jury trial on April 13, 1987, and April 14, 1987. This Court has heard the testimony of the parties and their witnesses, examined the exhibits introduced into evidence, reviewed the memorandum of law submitted, heard argument of counsel and is otherwise fully advised in the premises.

The parties were married in Dade County, Florida on February 21, 1970. They have two children, Roger Lee, born October 9, 1974, and Christopher Vance, born March 14, 1976.

The wife worked as a flight attendant during the beginning of the marriage until the birth of her first son. Since that time she has been a full time homemaker.

At the time of the marriage the husband was a medical intern and is presently a highly successful surgeon.

The parties have agreed that there will be shared parental responsibility for the two boys, with the wife as primary residential parent.

The issues to be decided by the Court are as follows:

1. Visitation.

2. Child support.

3. Certain areas concerning raising the children.

4. Alimony.

5. Equitable Distribution of the assets of the parties.

Based upon the foregoing the Court finds and Orders as follows:

I. Dissolution of Marriage

The Court finds that the marriage is irretrievably broken and that the wife has been a resident of Dade County, Florida for more than 6 months before the filing of the petition herein. The marriage between the parties is hereby dissolved.

II. Shared Parental Responsibility

There shall be shared parental responsibility of the two minor children, and the wife shall be the primary residential parent. While the parties are required to confer so that major decisions affecting the welfare will be determined jointly, the wife shall have the ultimate responsibility over the education of the children.

Both husband and wife shall exercise, in the utmost of good faith, their best efforts at all times to encourage and foster the maximum love and affection between their children and the other parent. Neither party shall in any way impede, obstruct or interfere with the exercise by the other of his or her right of companionship with the children, and neither of them shall in any way disparage or criticize the other parent, nor allow any other person to do so, to or in the presence of any of the children.

Both parties shall be entitled to participate in and attend special

activities in which the minor children are engaged, such as religious activities, school programs and graduation, sports and other extra-curricular activities and programs.

Each party shall immediately notify the other of any illness or emergency that may arise while the children, or anyone of them, are in his or her presence or control, and the party who is notified shall have immediate access to the children regardless of where the children may be.

Neither party may remove or aid, encourage or initiate the removal of the children beyond the boundaries of Dade County, Florida, for a period in excess of (four) 4 weeks without first obtaining the written permission of the other party or the Court.

## III. Visitation

It is the intent of the Court that the children be afforded as close an association with each parent as the circumstances allow, consistent with the best interest of the children. However, in light of the often chaotic schedule of the husband, the Court finds it in the children's best interest to design a relatively loosely structured visitation schedule.

Each party shall have the children 1 weekend per month. For each calendar month, the husband shall choose the initial weekend for his visitation and advise the wife at least one week in advance of the month. The wife shall then choose her weekend for the calendar month.

The husband shall then have visitation rights for one day of each remaining weekend in the month, but must give the wife one week's notice of the day chosen for visitation.

Visitation hours for the full weekend visitation shall be from Friday afternoon after school until Sunday evening at 8:00 p.m. The husband is admonished not to return the children to the wife before 8:00 p.m.

The husband shall have additional visitation of one night per week from 5 p.m. until 8:00 p.m. The husband shall give advance notice of at least 48 hours as to which day he will exercise visitation.

The husband shall have open telephonic communication with his children.

The husband shall have at least 3 weeks summer visitation with the children, and must advise the wife by April 1st of each year as to which dates he wants such visitation.

The parties shall share all major holidays.

43

## IV. Child Support

The husband shall pay to the wife as support for the minor children of the parties the monthly sum of $3,000.00, this sum to be prorated 50% for each child, the first payment being due on June 1, 1987, and a like sum on the 1st day of each consecutive month thereafter, until each child reaches the age of 18 years, or dies, marries or becomes self-supporting, whichever shall first occur.

All payments shall be made through the Central Depository. Payments shall be made payable to Clerk, Circuit Court and forwarded to:

Central Depository
15th Floor
140 West Flagler Street
Miami, Florida 33130

Payments shall be made by cash, check or money order. The case number shall be included with each payment.

The husband shall further provide medical and health and dental insurance for the minor children and be responsible for all reasonable medical expenses incurred by the minor children.

As an incidence to child support, the husband shall be required to maintain his life insurance policy with Summit National Insurance Company in the amount of $350,000.00 with his children as beneficiaries.

## V. Alimony

The parties have been married for 17 years. The wife has not worked since the early days of her marriage and is presently 41 years of age. Her small interior decorating business earns virtually no money at all. She has lived a gracious lifestyle married to a highly successful surgeon. The facts of this case are remarkably similar to those in *Colucci v. Colucci*, 392 So.2d 577 (Fla. 3d DCA 1980) wherein Judge Schwartz noted:

". . . Mrs. Colucci manifestly has no present ability to support herself and no reasonable prospects that she will be able to do so in the future. There is nothing but hopeful speculation that her admirable desire to be employed will be fulfilled in any meaningful fashion even should she indeed receive a bachelor's degree within the next few years. Judicial notice may be taken that the job market is not favorable for a recent female college graduate in her late 40s, with a child at home and with no previous experience. And even the most sanguine could not believe that she would ever earn an amount

which could serve to discharge her ex-husband's obligation to contribute to the support of the person who was his wife and homemaker for 24 years and the mother of his five children."

See also *Foss v. Foss,* 391 So.2d 606 (Fla. 3d DCA 1981).

The Court therefore finds that the wife is entitled to receive permanent alimony from the husband.

Accordingly, the husband shall pay alimony to the wife in the monthly amount of $4,000.00 commencing on the 15th day of May 1987, and a like sum on the 15th day of each month until the death of either party or remarriage of the wife.

The alimony shall be paid by cash, check or money order to the central depository in the same manner as child support.

The husband shall further keep in full force and effect his life insurance policy with Ohio National Insurance Company in the amount of $250,000.00 with his wife Jo Van Moebus as beneficiary.

## VI. Equitable Distribution

The marriage partnership lasted 17 years. All assets acquired by the parties were acquired during the marriage and are marital assets. Accordingly, it is the intent of the Court to distribute these assets in as equal a manner as is possible.

The major disagreement between the parties concerning the value of their many assets is the value of the husband's medical practice, and whether the valuation of such practice should include 'goodwill'.

The Court recognizes that there is no direct decision in the State of Florida on this specific point. It notes, however, that *both* experts who testified in this cause agreed that goodwill was an element to be considered.

In *Dugan v. Dugan,* 457 A.2d 1 (1983) the New Jersey Supreme Court stated:

"Though other elements may contribute to goodwill in the context of a professional service, such as locality and specialization, reputation is at the core. . . . Future earning capacity per se is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting goodwill is property subject to equitable distribution."

Inclusion of the element of goodwill in the valuation of a partnership

**45**

was recognized by the Florida Supreme Court in *Swann v. Mitchell*, 435 So.2d 7979 (Fla. 1983).

See also *In re Marriage of Nichols*, 606 P.2d 1314 (Colo. 1979); *Marriage of Lukens*, 558 P.2d 279 (Wash. 1976).

The North Carolina Court of Appeals in *Poore v. Poore*, 331 SE. 2d 266 (N.C. App. 1985) observed that the vast majority of courts that have ruled on the question have held that goodwill of a professional practice is property of value that should be included among the assets distributed upon the dissolution of a marriage.

This Court agrees, and specifically includes goodwill in the valuation of the husband's medical practice.

The property of the parties shall be divided in the following manner:

I. To the husband:

(The Court has included its valuation of each assets following the asset description).

1. 50% of the pension profit plan ($153,383.50).
2. 50% of the defined benefit plan ($42,345.50).
3. Husband's IRA ($10,220.00).
4. 50% Coral Gables I partnership ($6,300.00).
5. 50% trust account ($1,917.50).
6. 50% Seminole Park ($11,875.00).
7. 50% Capital Realty $5,000.00).
8. 50% Non-Invasive Medical Corp. ($3,000.00).
9. Stocks ($600.00).
10. Boat ($21,000.00).
11. Mazda ($5,925.00).
12. 50% Calvert Group ($6,263.50).
13. Husband's personal effects ($9,500.00).
14. Club membership, Coral Reed Yacht Club ($3,500.00).
15. 50% Life Insurance C.S.V. ($1,951.00).
16. Husband's medical practice ($202,000.00).

II. To the wife:

1. Marital resident ($57,500.00).
2. 50% Pension/profit plan ($153,383.50).

3. 50% defined benefit plan ($42,345.50).
4. Wife's I.R.A. ($8,770.00).
5. 50% Coral Gables I partnership ($6,300.00).
6. 50% Trust Account ($1,917.50).
7. 50% Seminole Park ($11,875.00).
8. 50% Capital Realty ($5,000.00).
9. 50% Non-Invasive Medical Corp. ($3,000.00).
10. Wife's jewelry ($6,050.00).
11. Volvo ($-0-).
12. 50% Calvert Group ($6,263.50).
13. Wife's personal effects ($10,000.00).
14. Furniture and art works ($10,000.00).
15. Silver and china ($5,732.00).
16. Club membership, Riviera C.C. ($11,000.00).
17. 505 Life Insurance C.S.V. ($1,951.00).

The value of the assets distributed to the husband equal $484,781.00. The value of the assets distributed to the wife equal $341,088.00.

To achieve a fair and equitable distribution of the assets of the parties acquired during 17 years of marriage, the Court hereby awards to the wife the sum of $140,000.00 as lump sum alimony.

This sum shall be paid to the wife within 5 years from the date hereof, in payments of not less than $28,000.00 per year, the first payment being due the 30th day of April, 1988.

The parties are ordered to complete all papers necessary to effectuate the property transfers ordered herein within 30 days from the date of this final judgment.

## VII. Attorney Fees and Suit Money

The husband shall be responsible for payment of the wife's attorney's fees and suit money. These amounts shall be determined by the Court upon proper motion and evidentiary hearing.

## VIII. Reservation of Jurisdiction

The Court specifically reserves jurisdiction to award attorneys fees and suit money, and to enforce the provisions of this final judgment.

DONE and ORDERED in Chambers, at Miami, Dade County, Florida this 28th day of April, 1987.