IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEBRA STEVENS,<br><br>    Appellant / Cross-Respondent,<br><br>        v.<br><br>CRAIG JONOV, M.D. and JANE DOE JONOV, and their marital community, and the GALLERY OF COSMETIC SURGERY PLLC, ALDERWOOD SURGICAL CENTER LLC aka the GALLERY OF COSMETIC SURGERY successor in interest to the GALLERY OF COSMETIC SURGERY aka the GALLERY OF COSMETIC SURGERY PLLC,<br><br>    Respondents / Cross-Appellants. | No. 85148-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — In 2014, Debra Stevens received various cosmetic procedures from Dr. Craig Jonov, the then-owner of Gallery of Cosmetic Surgery, PLLC (the Gallery) and Alderwood Surgical Center, LLC (Alderwood Surgical). In March 2017, Stevens filed suit against Jonov for claims including medical negligence. In October 2021, Stevens amended the complaint to add Alderwood Surgical as a defendant and to add a claim under Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. Alderwood Surgical filed a motion for summary judgment, arguing it was not a successor-in-interest to Jonov, which the court granted. Later, on Stevens's motion, the court found Jonov had

spoliated evidence by not producing Stevens's medical records in their "native format" and awarded Stevens attorney fees for discovery. A jury found in Jonov's favor on both the negligence and CPA claims.

On appeal, Stevens challenges the trial court's dismissal of claims against Alderwood Surgical. She also appeals the court's failure to enter default judgment or an adverse inference instruction as a sanction for spoliation and the court's denial of her motion for a new trial. Jonov cross-appeals the finding of spoliation as well as the imposition of sanctions. As we conclude that Jonov had no duty to preserve Stevens's medical records in their native format and did not violate discovery rules by failing to produce records that were not under his control, we hold that the trial court erred by awarding attorney fees for discovery violations to Stevens. We otherwise affirm.

FACTS

In March 2014, Dr. Craig Jonov performed face and eye lift procedures as well as a breast augmentation on Debra Stevens. After the procedures, Stevens began experiencing sialocele—the pooling of saliva under the skin, resulting in facial swelling—which she needed to have drained several times. Stevens claimed that she was left with "scarring, partial facial paralysis and facial numbness" and concavity of her left breast, and while some of her symptoms resolved, she still had "permanent partial paralysis, numbness to [her] face and hearing loss."

At the time that Stevens underwent her cosmetic procedures, Jonov was the sole owner of the Gallery and the sole trustee of the Craig Jonov Gift Trust

2

(the Trust), which held a 100 percent ownership interest in Alderwood Surgical. Alderwood Surgical is a licensed "ambulatory surgical facility" and "owns tenant improvements that it leases to" the Gallery. The Gallery "provide[d] all professional services to patients and employ[ed] all personnel."

In December 2016, Jonov and Sajan entered into an asset and purchase agreement (Purchase Agreement) for Sajan to purchase all of Jonov's interests in Alderwood Surgical and "certain assets" of the Gallery. In addition to the Purchase Agreement, Jonov and Sajan entered into an agreement to employ Jonov at Alderwood Surgical. The Gallery was officially dissolved on June 5, 2017.

On March 16, 2017, Stevens filed suit against Jonov and "Washington Surgical Institute, PLLC, dba The Gallery of Cosmetic Surgery"[1] for negligence and failure to obtain informed consent. Jonov was served on May 18, 2017.

In February 2019, Stevens submitted requests for production to Jonov, including the following:

> Requests for Production No. 2: Please produce for copying and inspection all medical records of any type, including photographs, video or other recorded material you have in your custody and/or control relating to medical care and/or treatment provided Plaintiff, including medical records of Defendants and other [] providers supplied in response to subpoenas. You need only supply records that have not already been produced.

---

[1] Jonov had an ownership interest in the Washington Surgical Institute, PLLC between March 25, 2014 and May 7, 2014. However, that entity was not the proper business entity at the time the initial complaint was filed. Stevens later amended her complaint to reflect the proper entity, Gallery of Cosmetic Surgery.

Jonov objected, stating that Stevens's request sought information that was not in his custody or control. Nevertheless, Jonov produced copies of Stevens's medical records in paper format. Stevens did not object at that time to the format.

On October 27, 2021, Stevens filed an amended complaint adding Alderwood Surgical as a defendant along with the Gallery and Jonov (collectively, "defendants" or "Respondents"),[2] alleging medical negligence and violations of the CPA, and dropping the informed consent claim.[3] Stevens claimed Alderwood Surgical was liable as a successor-in-interest to the Gallery because the transfer of Alderwood Surgical from Jonov to Sajan was fraudulent. Stevens subpoenaed the attorneys who represented Sajan in the purchase of Alderwood Surgical and assets of the Gallery, but a court commissioner quashed the subpoenas without prejudice based on attorney-client privilege. Stevens subsequently issued additional subpoenas to Jonov's and Sajan's respective attorneys and accountants from the sale of Alderwood Surgical, seeking financial records related to the sale. Jonov and Sajan filed a joint motion to quash these subpoenas, but the trial court denied their motion on March 11, 2022.

On December 6, 2021, Alderwood Surgical filed a motion for summary judgment seeking dismissal of all claims against it.[4] On April 4, 2022, the trial court granted Alderwood Surgical's motion.

---

[2] Although Stevens refers to Sajan as a defendant, neither the initial complaint nor the amended complaint lists Dr. Javad Sajan as an individual defendant. The amended complaint names only Sajan's business, Alderwood Surgical, as a defendant.

[3] Stevens did not proceed with her previous informed consent claim but rather pursued it as a CPA claim.

[4] While the record does not include exactly what documents were produced, from the parties' briefing below, it appears undisputed that Jonov did produce some responsive documents, including copies of portions of Stevens's medical records in June 2017 and March 2019.

4

In August 2022, Stevens sought to view her "original medical records and files" and asked "that any electronic files be produced in their original form . . . within the next week." Stevens alleged that the medical records Jonov produced in 2019 did not include the "Operative Report"[5] and challenged the origin of the produced documents and when they were created.[6] A court commissioner granted Stevens's motion to compel Jonov to produce her original medical records and awarded her attorney fees. On revision, the trial court vacated the attorney fee award but otherwise declined to revise the commissioner's order, stating that "[Stevens] has now shown good cause that she needs the records in their native form as she believes the records have been altered."

Thereafter, Stevens provided instructions for Alderwood Surgical's records custodian to obtain her original medical records and corresponding metadata. Alderwood Surgical's records custodian, Sabrina Damani, explained in her declaration that Alderwood Surgical was "not able to access patient files outside of the PatientNow[7] [electronic health record] software," as was typical with other providers. Damani further stated that she followed the protocol provided by Stevens's expert but was notified that when the records were downloaded, the metadata showed only a "created/modified date" which corresponded with the date the records were sent and received by Alderwood's attorneys. Damani

---

[5] The record indicates that the "Operative Report" is a type of medical record.

[6] She further argued that even if Jonov disclosed her protected health information (PHI) to Alderwood Surgical absent her consent, contrary to RCW 70.02.080 and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), PL 104–191, August 21, 1996, 110 Stat. 1936, he still had a duty to preserve her medical records.

[7] PatientNow provides "all-in-one software and consulting service solutions" for "businesses focused on beauty, wellness, and medical aesthetics" with a "commitment to delivering purpose-built technology to medical aesthetics and wellness service providers." PatientNow, https://www.patientnow.com/ (last visited July 21, 2025).

explained that she tried various methods to export the patient files from PatientNow, but the metadata continued to show only the "created date of the same day the files were exported," not the metadata Stevens sought.

Stevens then pursued CR 37(b) sanctions alleging Jonov failed to comply with the court's order to produce her medical records and relevant metadata. On December 1, 2022, the trial court found Jonov in contempt of its prior order compelling production of records "in their native form," but reserved its decision as to what sanctions to impose until the end of trial. The trial court also explained that it would be entering a jury instruction explaining Jonov's obligation and subsequent failure to produce Stevens's medical records.

During trial, Stevens continued trying to obtain her medical records with the original metadata. Stevens learned from PatientNow that the contract for their service, the business associated addendum (BAA), was with the Gallery. The BAA included a provision barring the sale of protected health information (PHI) absent client consent and authorized PatientNow to provide clients with their information if the Gallery materially breached. Initially, a PatientNow employee informed Stevens's forensic expert, Michael Andrew, that it could produce her information if she supplied her name, patient identification number, and the entity that contracted with PatientNow. However, when Andrew contacted PatientNow's production team, he was informed that it could not export "specific patient" files without exporting the entire database. On December 8, 2022, during trial, a PatientNow employee provided Stevens with a screenshot showing the Operative Report was uploaded into the PatientNow system on June 19, 2017.

6

That same day, Andrew testified at trial that the metadata information Stevens received from PatientNow corresponding to the Operative Report "concerns the date that a document was created, which translates to when it was uploaded and stored" in the PatientNow system. The court instructed the jury regarding the defendants' failure to produce Stevens's "original medical records" despite being ordered to do so, stating in jury instruction no. 24 that the original records were in Alderwood Surgical's custody, Dr. Sajan had control over them, and that the jury could draw any inference it deemed proper from those facts.

On December 19, 2022, the jury found Jonov not liable for negligence or under the CPA. On January 25, 2023, the trial court entered a judgment on the verdict, denied Stevens's motion to stay the jury verdict, and granted her motion for fees pertaining to discovery in the amount of $24,043. Stevens filed a motion for a new trial, which the court denied. Also post-trial, the trial court issued a written order incorporating its December 1 oral ruling finding Jonov in contempt of its prior order compelling production and granting Stevens's motion for sanctions for spoliation of evidence.

Stevens appeals the trial court's order granting summary judgment for Alderwood Surgical, the jury verdict for Jonov, and the order denying her CR 59 motion for a new trial. Jonov cross-appeals the trial court's spoliation finding and its entry of sanctions.

ANALYSIS

Stevens raises several issues on appeal. First, she challenges the trial court's dismissal of claims against Alderwood Surgical because it was not a

7

successor in interest and its order granting Alderwood Surgical's motion to quash subpoenas of its attorneys. Second, regarding discovery of her medical records, Stevens argues that the court should have issued an order of default or an adverse inference instruction, and Jonov cross-appeals the trial court's order compelling him to produce the records in native format with metadata, as well as its finding of spoliation and award of attorney fees to Stevens on discovery issues. Stevens also challenges the trial court's jury instruction no. 19 about her CPA claim and Jonov's use of an illustrative exhibit. Additionally, she challenges Jonov's argument that her CPA claim was not timely and was manufactured. Finally, she appeals the trial court's order denying her a new trial based on newly discovered evidence and Jonov's misconduct. We address each claim in turn.

I.    Stevens's Claims Against Alderwood Surgical

Stevens argues the trial court erred by dismissing the claims against Alderwood Surgical because there were questions of fact about whether Alderwood Surgical was liable as a successor-in-interest. Alderwood Surgical argues that it did not assume the liabilities of the Gallery because it did not acquire them in the Purchase Agreement.[8]

We review orders granting summary judgment de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). A reviewing court must consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Id. A reviewing court may affirm summary

---

[8] As an alternative basis for the court to grant summary judgment, Alderwood Surgical argued that Stevens's claim did not relate back to the original time of filing and, as such, the statute of limitations had run on her claims against Alderwood Surgical. The court did not address this argument in its summary judgment ruling.

judgment on any basis that is supported by the record. Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011). Summary judgment is appropriate when "there is no genuine issue as to any material fact," meaning the moving party is entitled to judgment as a matter of law. CR 56(c). A "material fact" exists when such fact impacts the outcome of the litigation. Owen v. Burlington N. Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). Further, there is a genuine issue of material fact when "the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Keck, 184 Wn.2d at 370.

The party moving for summary judgment has the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A defendant moving for summary judgment can submit affidavits to demonstrate that no issue of material fact exists or can demonstrate to the trial court that the plaintiff lacks competent evidence to support an essential element of their case. Id. at 225-26. If the defendant satisfies the initial burden, the burden then shifts to the plaintiff. Id. at 225. The plaintiff must sufficiently demonstrate the existence of an element essential to their case and on which they will bear the burden of proof at trial. Id. The failure to make such showing will result in the trial court granting summary judgment. Id.

In general, "a corporation purchasing the assets of another corporation does not become liable for the debts and liabilities of the selling corporation." Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc., 166 Wn.2d 475, 481-82, 209 P.3d 863 (2009). However, a successor is liable when "(1) the purchaser

9

expressly or impliedly agrees to assume liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability." Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp., 135 Wn.2d 894, 901, 959 P.2d 1052 (1998) (quoting Hall v. Armstrong Cork, Inc., 103 Wn.2d 258, 261, 692 P.2d 787 (1984)). The party asserting successor liability has the burden of proving that one of the exceptions applies. See id. at 902 (plaintiff failed to meet its burden of proving that the defendant's asset transfer lacked adequate consideration, but nevertheless demonstrated facts that the transfer was meant to avoid creditors).

Stevens argued below that Alderwood Surgical was liable as a successor under three exceptions to the general rule: (1) de facto merger; (2) continuation of the predecessor and (3) fraudulent transfer. Alderwood Surgical sought summary judgment, which the trial court granted in part, concluding (1) the sale was not a de facto merger and (2) Alderwood Surgical was not a "mere continuation" of the Gallery. The court reserved ruling on whether the sale was a fraudulent attempt to avoid liability such that successor liability could apply, but after a second hearing on the motion, the court dismissed the successor liability claim based on that theory as well.

On appeal, as an initial matter, Stevens assigns error to the commissioner's order[9] quashing her January 21 subpoena to attorney Luke

---

[9] Stevens filed a motion for revision before the court commissioner entered its ruling. "[U]nless a demand for revision is made within ten days from the entry of the order or judgment of the court commissioner, the orders and judgments shall be and become the orders and judgments of the superior court, and appellate review thereof may be sought in the same fashion as review of like orders and judgments." RCW 2.24.050. On appeal, Stevens seeks review of the commissioner's ruling, and nothing in the record indicates that the trial court ruled on her

10

Campbell, who represented Sajan in his purchase of Alderwood Surgical. She claims that because the attorney-client privilege does not extend to communications that involve fraudulent conduct, Cedell v. Farmers Ins. Co. of Wash., 176 Wn.2d 686, 697, 295 P.3d 239 (2013), and she alleged the sale of Alderwood Surgical was motivated by a fraudulent intent, she was entitled to the communications between Jonov and Sajan and their respective counsel. But Stevens issued subsequent subpoenas to the parties' attorneys on February 24 and, in response, received the information she initially sought in the January 21 subpoena. As we cannot provide effective relief, Stevens's claim on appeal challenging the commissioner's order quashing the January 21 subpoena is moot. See State v. Deskins, 180 Wn.2d 68, 80, 322 P.3d 780 (2014) (if court cannot provide effective relief, an issue is moot).[10]

Next, regarding successor liability, Stevens contends there was a genuine issue of fact as to whether Alderwood Surgical is liable as a successor based on the fraudulent transfer exception.[11] To demonstrate fraud, a plaintiff must show "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by

---

premature motion for revision. Thus, we may review the commissioner's ruling as a ruling by the trial court.

[10] Moreover, the commissioner acted within their discretion to grant Alderwood Surgical's motion to quash the January subpoena to Campbell. A trial court has discretion to grant or deny a motion to quash, and its decision will be overturned only if it is manifestly unreasonable or based on untenable grounds or untenable reasons. Eugster v. City of Spokane, 121 Wn. App. 799, 807, 91 P.3d 117 (2004). Stevens does not explain how Alderwood Surgical's transactional attorneys misrepresented their relationship or the status of the Gallery. A "bare allegation of fraud" is not sufficient to warrant in camera review of allegedly privileged documents. Whetstone v. Olson, 46 Wn. App. 308, 311, 732 P.2d 159 (1986).

[11] Stevens did not appeal the order granting partial summary judgment. Further, on appeal, Stevens focuses her argument on the fraudulent transfer theory for successor liability, although she does argue that de facto merger and continuation of predecessor circumstantially support a finding of fraud.

the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." Adams v. King County, 164 Wn.2d 640, 662, 192 P.3d 891 (2008). At summary judgment, the trial court noted that "the existing fact that would have to be misrepresented during the sale would be, was Dr. Jonov aware of this lawsuit being filed but did not disclose it," as to which it concluded, "There's no evidence of that . . . and there's no facts that would prove it."

Stevens claims "lack of sufficient consideration alone is sufficient evidence to withstand summary judgment," pointing to her forensic accounting expert's report valuing the Gallery as of December 2016 at $534,000, with goodwill valued at $506,000. Alderwood Surgical[12] responds that looking at the transaction as a whole, it paid Jonov sufficient consideration, and " 'consideration is not the conclusive issue.' " (Quoting Eagle Pac., 135 Wn.2d at 905.) We agree with Alderwood Surgical.

"The fraudulent transfer theory has always required consideration *and* good faith." Eagle Pac., 135 Wn.2d at 909. While "[a]dequate consideration for a transfer of assets . . . is an important element when determining whether to impose successor liability," id. at 902, "fraud can be present despite the payment of adequate consideration." Id. at 909. Whether there is common identity or ownership of the buying and selling entities also may be relevant to determining

---

[12] Alderwood Surgical also argues that Stevens cannot meet the high bar to show corporate fraud or constructive fraud. The trial court did not dismiss Stevens's claim upon this ground, and we need not consider it here, as we may affirm a grant of summary judgment on any ground supported by the record. Port of Anacortes v. Frontier Indus., Inc., 9 Wn. App. 2d 885, 892, 447 P.3d 215 (2019).

12

good faith because common ownership may "cast[] a suspicion on the transactions." Id. at 909.

Here, the purchase and sale involved three distinct steps. First, Alderwood Surgical was purchased from the Trust for a total purchase price of $240,000—$2,500 for the Trust's interest and $237,500 for the Trust's "redeemed interest." Next, the Purchase Agreement provides that Alderwood Surgical would purchase the Gallery's assets for $10,000, which included inventory and tangible assets that are necessary for operation and use of the business.[13] Third, Jonov and Sajan entered into an employment agreement to employ Jonov at Alderwood Surgical.[14] Although the Purchase Agreement lists the sale price for Alderwood Surgical as $240,000, Alderwood Surgical's accounting expert valued the Purchase Agreement as worth $500,000 to Jonov. This figure takes into account the employment agreement, which guaranteed Jonov a 50 percent commission-fee as well as a payout of $250,000 if he were terminated in the first year of his employment, or 50 percent of his gross compensation of the preceding year if he were terminated in the first five years.

---

[13] The Purchase Agreement includes a schedule that defines the asset price as including the following:
Cash: Class I - $0
Investments: Class II - $0
Accounts Receivable: Class III - $0
Inventory: Class IV - $0
Fixed Assets: Class V - $9,500, for furniture, fixtures, and improvements
Intangibles: Class VI - $500, for the domain name and any other items in the class
Goodwill: Class VII - $0
[14] According to Sajan's attorney for the transaction, the Purchase Agreement was structured this way to ensure that Alderwood could retain its employer identification number (EIN) as required for Medicare certification.

Although consideration may be adequate when the proceeds of the transfer are equal in value to the assets transferred, this does not account for "intangible assets" the value of which is difficult to calculate. Id. at 903. Here, Stevens contends that valuing goodwill at $0 demonstrates inadequate consideration. In general, goodwill is "intangible [in] nature and is commonly defined as the expectation of continued public patronage." In re Marriage of Lukens, 16 Wn. App. 481, 483, 558 P.2d 279 (1976). Goodwill can attach to a professional person, such as a physician, and, while generally not marketable, can be valued. Id. at 484-86 (explaining that professional goodwill can be valued for the purpose of property division in a dissolution, so long as the physician continues to practice and "receive a return on the goodwill associated with his name"). Additionally, if the professional person discontinues their business, " 'the goodwill that once attached to [their] practice may continue in existence in the form of established patients or clients, referrals, trade name, location and associations which now attach to the former partners or buyers of the practice.' " McLelland v. Paxton, 11 Wn. App. 2d 181, 207-08, 453 P.3d 1 (2019) (quoting In re Marriage of Hall, 103 Wn.2d 236, 241, 692 P.2d 175 (1984)).

Here, Sajan's transactional attorney explained that goodwill was zeroed out in the Purchase Agreement because Sajan sought to run his own facility and did not need the "financial performance or reputation" of Jonov's practice. The value to Sajan was having Jonov as an employee and 50 percent of the revenue he brought in. Moreover, because the Purchase Agreement did not include a non-compete clause, Jonov retained his professional goodwill personally and

14

could take it with him; thus, its value was accounted for in his employment contract. Therefore, considering the Purchase Agreement as a whole, including the amount paid for Alderwood Surgical, the amount paid for the Gallery's assets and Jonov's employment contract and his reputational goodwill, viewing the evidence in the light most favorable to Stevens, consideration was adequate as a matter of law.

Nevertheless, Stevens asserts that other evidence creates a genuine issue of fact regarding whether the transfer was fraudulent—in particular, the timing of the sale. She claims Jonov and Sajan appeared to be rushing to complete the sale, citing to correspondence between their counsel in September 2016 expressing a desire to close the transaction in two weeks. However, while negotiations began in September 2016, despite the parties' desire for a short target timeline, the transaction closed in December 2016, nearly three months before Stevens filed suit and five months before she effected service on Jonov. The record evidence shows Respondents were not aware of her claims against them until after the transaction closed, as the initial complaint against Jonov was not filed until March 16, 2017.[15]

Stevens also argues that the other exceptions prompting successor liability—de facto merger and continuation of predecessor—provide circumstantial support for a finding of fraud. However, in its January 18, 2021 order, the trial court dismissed "any and all claims" that the transaction was a de

---

[15] Stevens also points to the fact that the Gallery was not dissolved until June 2017, after she served Jonov with her complaint, and alleges the sale did not close until April 2017, but provides no evidence of this date.

facto merger or a mere continuation of the Gallery, and Stevens did not appeal or assign error to this order. When a party fails to assign error to a trial court order and fails to address the issues in their briefing, it waives the right to appeal that issue. State v. Olson, 126 Wn.2d 315, 321, 893 P.2d 629 (1995). Therefore, she cannot rely on these other exceptions as circumstantial evidence of fraud.

Stevens also contends that under WAC 458-20-254, Jonov was required to keep his financial records for five years and under federal law, was required to keep such records for six years but failed to produce financial records for discovery. However, Stevens does not provide argument or point to any evidence in the record supporting her claim that failing to comply with state or federal laws regarding retention of financial records presents an issue of fact as to whether the transaction was a fraudulent transfer.

Finally, Stevens points to complaints by Sajan's former employees and patients, some of whom alleged misleading advertising and an alleged prior complaint of false advertising against Jonov. But Stevens fails to demonstrate how complaints by former employees and patients create a genuine issue of material fact as to whether Jonov was aware of *Stevens's* lawsuit but did not disclose it, thus rendering the sale to Sajan a fraudulent transfer.

We hold that the trial court did not err by granting Alderwood Surgical summary judgment. The record does not demonstrate a genuine issue of fact as to whether the sale of Alderwood Surgical was fraudulent.

II.     Finding of Spoliation and Sanctions

In response to Stevens's requests for production, Jonov produced portions of Stevens's medical records in 2019. Then, in August 2022, Stevens contacted Jonov's counsel seeking to view her "original medical records and files" and asked "that any electronic files be produced in their original form . . . within the next week." The parties had a CR 26(i) conference but could not come to an agreement. On September 26, 2022, Stevens moved to compel, alleging that the medical records Jonov produced in 2019 did not include the "Operative Report" and challenged the origin of the produced documents and when they were created.[16] On October 6, 2022, a court commissioner ordered that "[a]ll original records shall be made available to [Stevens's] counsel within 10 days." On November 15, 2022, the trial court denied Jonov's request to revise the production order, stating as follows:

> [T]he Court finds that defendant Jonov had a duty to preserve records related to this litigation and thus cannot avoid discovery obligations because he transferred records to another entity.
> On the other hand, CR 34(b)(2)(c) provides that a person requesting production of documents may specify the form or forms in which electronically stored information is to be produced. Plaintiff did not do that back in 2019 when the request was made. CR 34(b)(3)(D) provides that, if no form was specified in the request, the responding party must state the form or forms it intends to use. In this case, the responding party/defendant simply provided the hard copies of those records in response, clearly electing hard copy.[17]

---

[16] She further argued that even if Jonov disclosed her personal health information to Alderwood Surgical absent her consent in violation of RCW 70.02.080 and HIPAA, he still had a duty to preserve her medical records.

[17] In the same order on revision, the trial court granted Jonov's request to vacate Stevens's attorney fees award.

The trial court explained that it was reasonable for Jonov to have originally produced the records in the manner it did, but nonetheless concluded that "[Stevens] has now shown good cause that she needs the records in their native form as she believes the records have been altered," and so the commissioner's order compelling disclosure was appropriate.

In the meantime, on November 9, 2022, Stevens had filed a motion for sanctions seeking an order of default against Jonov for "spoliation of evidence and for [his] failure to produce original medical records," claiming that those "original medical records support a finding that [Jonov] committed medical negligence." On December 1, 2022, the trial court found Jonov in contempt of its prior order compelling production but reserved any sanctions for contempt until the end of trial. Next, the court gave jury instruction no. 24, which stated as follows:

> Dr. Jonov was ordered to produce Debora [sic] Stevens original medical records and has been found to have a duty to produce those records. Dr. Jonov has not been able to produce the original medical records despite being ordered to do so. Dr. Jonov sold his practice to Dr. Sajan. The original medical records are in the custody of Alderwood Surgical Center, which is now the corporation of Dr. Sajan. Dr. Jonov is an employee of Dr. Sajan. The sale included the sale of patient records. Dr. Sajan now has control of the original medical records, which have failed to be produced. The jury may draw any inference they deem proper from these facts.

In deciding to issue this instruction, the trial court reasoned that "the law of the case was established by [the court's] order on revision, which essentially indicated he had a duty" to produce Stevens's medical records in their "native form." The court explained the reason it created this jury instruction in this way

18

rather than a "more severe sanction" was because "[Jonov] may have a duty to produce, but was it willful negligence for not producing it? I don't know." At that point, the court had stated it did not find RCW 70.02.080 or the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104-191, 110 Stat. 1936, "to be relevant to the motion to compel discovery," but, nevertheless, Jonov "had a duty to preserve records related to this litigation and thus cannot avoid discovery obligations because he transferred records to another entity."

After the conclusion of trial, in an oral ruling at a hearing in January 2023, the court found Jonov was willfully and deliberately in contempt of the prior order to compel. Subsequently, it issued a written order granting "the Plaintiff's Motion for Spoliation of Evidence" incorporating its oral ruling from the December 2022 hearing, but not the findings stated in the January 2023 hearing.

In his cross-appeal, Jonov challenges the court's imposition of sanctions and subsequent award of attorney fees to Stevens, arguing that he had no duty to preserve Stevens's records or metadata and no duty to produce those records or metadata. Stevens, on the other hand, contends that the trial court should have granted a remedy for spoliation other than instruction no. 24, either a default judgment or an adverse inference instruction.

A trial court has broad discretion to impose discovery sanctions because it is in the best position to decide the issue. Magaña v. Hyundai Motor Am., 167 Wn.2d 570, 582-83, 220 P.3d 191 (2009). We will not disturb a decision on discovery sanctions unless it is manifestly unreasonable or based on untenable grounds or reasons. Id. at 582. Similarly, we review the imposition of spoliation

19

sanctions for an abuse of discretion. Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC, 26 Wn. App. 2d 319, 330, 527 P.3d 134 (2023). However, a court "may impose a sanction for the failure to preserve evidence before a lawsuit is initiated only if, as a threshold legal issue, the allegedly spoliating party owed a duty to preserve that evidence." Id. at 346. We review whether a duty to preserve evidence exists de novo. Id. at 330. A court must evaluate for both an existing duty and culpability. Id. at 331, 337. Thus, we first address Jonov's argument that the trial court abused its discretion in determining he spoliated evidence.

A. Spoliation

Jonov claims he did not have a duty to preserve Stevens's original medical records and had no duty to produce those records. We agree.

Although a general duty to preserve evidence does not exist in Washington, such a duty may arise due to a fiduciary relationship, out of the parties' contract or a statute. Seattle Tunnel Partners, 26 Wn. App. 2d at 343-46. Stevens claims that Jonov owed her a fiduciary duty as her physician. However, she does not explain how this fiduciary relationship imposed a prelitigation duty upon Jonov to preserve her medical records and metadata.

In the alternative, as statutory sources of a duty to preserve her original medical records and metadata, Stevens cites generally to chapter 70.02 RCW and federal statutes, HIPAA and the Health Information Technology for Economic and Clinical Health (HITECH) Act.[18] But none of these establishes a duty for

---

[18] Health Information Technology for Economic and Clinical Health (HITECH) Act, 42 U.S.C. § 17901-53.

20

Jonov to preserve her medical records and metadata.[19] Rather, the statutes focus on protecting patient confidentiality and privacy.[20]

Likewise, Jonov's contract with PatientNow does not establish a duty to preserve; it merely incorporates HIPAA provisions and requires Jonov to respond to patient requests for PHI and prohibits the sale of PHI without the client's authorization. Further, a contract between parties can create a prelitigation duty to preserve, but such duty may not extend to third parties. Seattle Tunnel Partners, 26 Wn. App. 2d at 346, 348-50 (plaintiff owed a duty to the Washington State Department of Transportation [WSDOT] to preserve evidence arising from the parties' contract but did not owe WSDOT's *insurer* a contractual duty to preserve evidence). Here, the BAA is not a contract between Stevens and Jonov.

---

[19] Though not cited by the parties, other statutes in Washington do impose certain requirements for records preservation on hospitals and providers; however, none requires preservation of metadata or prohibits the sale of this information when a practice is sold or acquired. See, e.g., RCW 70.41.190 (providing that hospitals "shall retain and preserve all medical records which relate directly to the care and treatment of a patient for no less than ten years following the most recent discharge of the patient); RCW 70.02.160 (explaining that a provider must "maintain a record of existing health care information for at least one year following receipt of an authorization to disclose that healthcare information . . . and during the pendency of a request for examination and copying."); RCW 74.09.290 (requiring medical providers to make patient records available for the director of the Washington health care authority or the secretary of social and health services). Further, RCW 70.02.200(1)(c) authorizes a provider or practice that maintains the health care records to disclose those records to a successor in interest.

[20] In the statutes cited by Stevens, the respective sections describing each's legislative purpose make no mention of any duty of healthcare providers to preserve medical records. See RCW 70.02.005 (the legislature recognized that a patient's health information is sensitive and that a provider should protect such information, but that a patient has a right to access their information); HIPAA, Pub. L 104-191, 110 Stat. 1936 (Congress sought "to improve portability and continuity of health insurance coverage in the group and individual markets, to combat waste, fraud, and abuse in health insurance and health care delivery, to promote the use of medical savings accounts, to improve access to long-term care services and coverage, to simplify the administration of health insurance, and for other purposes"); HITECH Act, 42 U.S.C. §§17901-02 (ensuring that relevant federal and state agencies and the health care providers and insurers they contract with update and implement health information technology systems to provide patients with a more standardized and efficient healthcare system).

Moreover, any prelitigation duty to preserve evidence does not extend to evidence over which the party has no control. Homeworks Constr., Inc. v. Wells, 133 Wn. App. 892, 901, 138 P.3d 654 (2006). Here, Jonov sold his business, Alderwood Surgical, to Sajan in December 2016. The Purchase Agreement explicitly provides that "[s]ubject to Chapter 70.02 RCW, all medical records and patient charts arising from services provided by Employee [Jonov] under this Agreement shall be the property of the Company [Alderwood Surgical] at all times during and following termination of this Agreement." Thus, until Stevens filed her claim against Jonov in March 2017, Jonov would not have been on notice of a potential claim against him, and, according to the Purchase Agreement, Sajan had custody of Stevens's records at that point.

Also, the Purchase Agreement specifies that Alderwood Surgical, not Jonov, has a duty to preserve patient records for seven years:

> With regard to patient medical records delivered to Purchaser on the Closing Date, for each patient of the Medical Practice [the Gallery] and the Surgical Center [Alderwood Surgical], Purchaser shall retain the original of each's patient's records as follows: *(a) if the patient is an adult, for at least seven (7) years after the last date the adult patient received medical services from a Business Party [Alderwood Surgical, the Gallery, Jonov, Jonov's Trust]* . . . .

(Emphasis added.)

We conclude that Jonov did not have a prelitigation duty to preserve Stevens's original medical records, nor a duty under the applicable discovery rules to preserve or produce records that were no longer in his possession. Thus, the court abused its discretion in so holding.

Further, because Jonov had no duty to preserve the records in their original format, we agree with him that the court erred in concluding that he had spoliated evidence. Because we determine that Jonov did not have a prelitigation duty to preserve the records in their original form, we need not address Stevens's claim that a stronger sanction for spoliation was warranted.

B. <u>Award of Attorney Fees to Stevens as a Discovery Sanction</u>

In his cross-appeal, Jonov challenges the trial court's imposition of sanctions in the form of attorney fees as being an abuse of discretion because he was not in control of Stevens's medical records or metadata. We agree.

When Stevens initially alleged Jonov had failed to comply with the court's prior order to produce her medical records and relevant metadata and sought sanctions under CR 37(b), the trial court found Jonov in contempt of its prior order but reserved its decision to impose sanctions until the end of trial. After trial, in January 2023, the court granted Stevens's "Motion On Fees On Discovery Orders."[21] Thus, we separately address the propriety of the award of fees as a sanction for violating the order to produce discovery.

In a civil proceeding, a party may request another party to produce documents, electronically stored information, or other information in the custody of that responding party. CR 34. An evasive or incomplete answer constitutes a failure to answer. CR 37(a)(3). When a party responding to a discovery request

---

[21] In March 2023, after the conclusion of trial, the court entered a written order incorporating its oral ruling from December 2022 finding Jonov in contempt for violating the court's earlier order to produce, and also granting "Plaintiff's Motion for Sanctions for Spoliation of Evidence." However, the court did not specify any additional sanction for spoliation in that order, nor do the parties identify any specific additional sanction based on spoliation other than instruction no. 24.

23

fails to comply with an order compelling discovery, the court may impose sanctions, including entering an order of contempt. CR 37(b)(2). We review a trial court's discovery sanctions for an abuse of discretion. Magaña, 167 Wn.2d at 582.

Here, both when Stevens made her initial request to Jonov for her patient records, as well as later, when she specifically sought the metadata, Jonov lacked control over the records. Still, Jonov responded to the initial requests for production in 2019 with portions of Stevens's medical records. CR 34(b)(3)(F)(iii) does not require a party to "produce the same electronically stored information in more than one form," absent a showing of good cause.

The trial court determined that Stevens had shown good cause "that she needs the records in their native form as she believes the records have been altered." It then found Jonov in contempt for failing to comply with its order to produce—again, even though it was undisputed that Alderwood Surgical, not Jonov, controlled access to the records through its vendor, PatientNow.[22]

The trial court abused its discretion by holding Jonov in contempt for failing to produce Stevens's medical records in their "native format," as he no longer had custody over them after the sale of Alderwood Surgical closed in December 2016. Similarly, it abused its discretion in concluding that his refusal to produce the records was willful and deliberate.[23] Therefore, we hold that the trial

---

[22] Indeed, these undisputed facts were conveyed to the jury in instruction no. 24. Though Stevens suggested the court issue a subpoena to Alderwood Surgical, the court responded that it was her duty to provide it as plaintiff.

[23] The oral findings that Jonov's violation of the motion to compel was willful and deliberate were never incorporated into a written order as findings of fact.

court erred by entering the January 25 order ordering Jonov to pay attorney fees and costs as a discovery sanction.

III.     Jury Instruction No. 19 for CPA Claim

Stevens argues that the trial court erred in giving instruction no. 19, which provided as follows:

> The Consumer Protection Act does not prohibit acts or practices that are reasonable in relation to the development and preservation of business or that are not injurious to the public interest.

> The Consumer Protection Act must be liberally construed so that its beneficial purposes be served.

We review a jury instruction de novo and "within the context of the jury instructions as a whole." Gregoire v. City of Oak Harbor, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). A jury instruction is adequate when it allows " ' the parties to argue their theories of the case, do[es] not mislead the jury and, when taken as whole, properly inform[s] the jury of the law to be applied.' " Id. (quoting Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995)).

The legislature explicitly provided that the CPA "shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest." RCW 19.86.920. This language is known as the "reasonableness defense" and may be submitted to the jury "if there are material issues of fact about its application," but "is not a factor used in deciding whether a practice is deceptive." Stephens v. Omni Ins. Co., 138 Wn. App. 151, 170, 159 P.3d 10 (2007), aff'd sub nom. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 204 P.3d 885 (2009).

25

At trial, after the defendants rested their case, Stevens sought a directed verdict on the reasonableness defense, citing concern that it would "confuse[] the jury," because "[t]he jury doesn't have to look at reasonableness. They just have to look at whether or not [the conduct] was deceptive." The court agreed with Jonov that they could use the pattern jury instruction on the reasonableness defense.[24] Stevens then sought to add language from the statute that the CPA "shall be liberally construed that its beneficial purposes may be served."[25] The court accepted Stevens's recommendation and included it in instruction no. 19, after setting out the reasonableness defense.

On appeal, Stevens again contends that her CPA claim was based on false and misleading advertising and cites to statutory language that she claims renders false and misleading advertising an unlawful practice. She claims it was improper for the court to instruct on the reasonableness defense where false and misleading advertising was used to help Jonov develop his business. But Stevens cites to statutes that do not apply to her CPA claim, including statutes about vehicle dealers and manufacturers, fair credit reporting, and automotive repair.[26] These inapposite citations do not support Stevens's argument.

---

[24] Washington Pattern Instruction 310.02, "Reasonableness Defense to Consumer Protection Act Claim," tracks the language in RCW 19.86.920, stating, "The Consumer Protection Act does not prohibit acts or practices that are reasonable in relation to the development and preservation of business or that are not injurious to the public interest." 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 310.02, at 265 (7th ed. 2019).

[25] RCW 19.86.920 states in relevant part, "To this end this act shall be liberally construed that its beneficial purposes may be served."

[26] Stevens cites to RCW 46.70.070, stating that it "provides, '[v]iolations of this chapter are not reasonable in relation to the development and preservation of business.' " However, this statute does not apply to her claim, as it appears in chapter 46.70 RCW, "Dealers and Manufacturers" of vehicles. Moreover, the quoted language in RCW 19.182.150, part of the Fair Credit Reporting Act, chapter 19.182 RCW, is also inapplicable here. Stevens also cites to RCW 46.71.045 and states that it "provides, '[a]dvertising that is false, deceptive, or misleading is an

Instead, as Jonov contends, instruction no. 19 includes language directly from the applicable statute, RCW 19.86.920, and, thus, is a legally correct statement of the law. Travis v. Wash. Horse Breeders Ass'n, Inc., 11 Wn.2d 396, 408, 759 P.2d 418 (1988). Therefore, we hold that the trial court did not err by including instruction no. 19.

IV. Use of Illustrative Exhibit

Stevens argues that the trial court erred in allowing Jonov to use illustrative exhibit 153A. At trial, Jonov testified that exhibit 153A depicted "a paralysis of the buccal branch nerve," and noted that there is "no movement of – even at rest, you don't see any muscle tone to hold the lip up or even keeping it equal." Stevens argues the trial court abused its discretion in "admitting" exhibit 153A because she was not given notice before it was introduced at trial and she was not provided with information about its origin. Further, she argues that under ER 403, the probative value of exhibit 153A was substantially outweighed by the risk of unfair prejudice and risk that it would mislead the jury into finding that she was not injured because her injuries did not look like those in the exhibit.

We review evidentiary decisions for an abuse of discretion. Gerlach v. Cove Apts., LLC, 196 Wn.2d 111, 119, 471 P.3d 181 (2020). The trial court is given great deference in its decision unless no reasonable person would make the same decision. Id. at 119.

Stevens does not provide citations to the record demonstrating that she objected at trial to Jonov's using or testifying about this illustrative exhibit or that

---

unlawful act or practice.' " However, this is an inaccurate quotation of another statute that pertains to vehicles, chapter 46.71 RCW, "Automotive Repair."

she asked for any curative instruction. Nor did she identify this issue in her motion for a new trial. She argues for the first time on appeal that the illustrative exhibit should have been excluded under ER 403. Stevens does not present argument or authority that either the use of the illustrative exhibit or Jonov's testimony about it constitutes manifest constitutional error. We need not review a claim that is not supported by argument or relevant authority. Riley v. Iron Gate Self Storage, 198 Wn. App. 692, 395 P.3d 1059 (2017). Therefore, we decline to review this unpreserved error under RAP 2.5(a).[27]

V.      Denial of Stevens's Motion for New Trial

Stevens challenges the trial court's denial of her CR 59 motion for a new trial on several bases. Under CR 59, a party may seek a new trial for reasons including (1) a trial irregularity that prevented the party from having a fair trial, (2) misconduct of the prevailing party, (3) newly discovered evidence that could not with reasonable diligence have been produced at trial, or (4) where substantial justice has not been done. CR 59(a)(1), (2), (4), (9). We review orders granting or denying a new trial for an abuse of discretion. Smith v. Orthopedics Int'l, Ltd., P.S., 170 Wn.2d 659, 664, 244 P.3d 939 (2010). "[W]e require a much stronger showing of abuse of discretion to set aside an order granting a new trial

---

[27] In any case, the trial court did not abuse its discretion in allowing Jonov to use exhibit 153A for illustrative purposes. An illustrative exhibit "is appropriate to aid the trier of fact in understanding other evidence, where the trier of fact is aware of the limits on the accuracy of the evidence." State v. Lord, 117 Wn.2d 829, 855-56, 822 P.2d 177 (1991), overruled on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018)). Here, Exhibit 153A was not offered or "admitted" as an exhibit at trial. Instead, Jonov testified that he knew that illustrative exhibit 153A depicted patients with "a transection of [the buccal] branch" because he obtained them from a website "that does nerve repair for facial paralysis and nerve injury." Stevens was able to cross-examine him on the purpose and origin of the illustrative exhibit. Further, the trial court instructed the jury that it was not required to accept the opinion of an expert witness and could "consider the reasons given for the opinion and the sources of his or her information."

than one denying a new trial." Teter v. Deck, 174 Wn.2d 207, 222, 274 P.3d 336 (2012).

A. New Evidence

Stevens contends that she is entitled to a new trial under CR 59(a)(4) based on purported "new evidence" "includ[ing] evidence showing Defendant Jonov had access to Plaintiff's medical records" in the form of a screenshot showing "metadata" from PatientNow. "A new trial may be granted on the basis of newly discovered evidence only if the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 88, 60 P.3d 1245 (2003) (citing Holaday v. Merceri, 49 Wn. App. 321, 329, 742 P.2d 127 (1987)). "Failure to satisfy any one of these five factors is a ground for denial of the motion." Holaday, 49 Wn. App. at 330.

During trial, Stevens received a screenshot showing that the Operative Report was uploaded into the PatientNow system on June 19, 2017. Stevens's forensic expert, Andrew, testified that Exhibit 70 showed the "date that this file or document was uploaded and created on the storage location." This evidence was not "discovered since the trial" and therefore does not qualify as "newly discovered evidence."[28] The trial court did not err in denying a new trial on this basis.

---

[28] Otherwise, Stevens does not identify any newly discovered evidence, but rather, complains of a lack of evidence: "[n]o contract has been produced other than the contract between Patient[N]ow and Defendant Jonov," which prohibited him from selling her medical

B.  Alleged Misconduct

Stevens also argues that the "[c]umulative instances of misconduct" resulted in prejudice and denied her a fair trial, entitling her to a new trial under CR 59(a)(2). "Misconduct" describes "erroneous behavior or statements by counsel." Rookstool v. Eaton, 12 Wn. App. 2d 301, 312 n.4, 457 P.3d 1144 (2020). "Misconduct that results in prejudice is a basis for a new trial." Id. at 307-08.

Before trial, the court granted Stevens's motion in limine excluding evidence that her original complaint included an informed consent claim that was amended to a CPA claim and barring Jonov from arguing the CPA claim was brought for improper reasons. Stevens claims that Jonov's questions and comments about the informed consent form violated the restrictions from the motion in limine.[29]

While Jonov was examining Stevens at trial, he attempted to ask about her knowledge of the risks associated with her procedures, to which she objected. After colloquy outside the presence of the jury, the court provided its "solution," informing Jonov that he could "inquire as to what known risks [Stevens] knew. That's appropriate. You can refresh her memory if you need to. That's appropriate, but that implied consent form, at this point, is not going to be admitted." Then, Jonov presented Stevens with the document to refresh her

---

records, and "[t]here are no declarations showing or outlining any steps" to obtain Stevens's original medical records.

[29] Again, Stevens provides no citations to the record containing the objectionable comments. An appellant must provide relevant argument, citations to authority and references to the record. RAP 10.3(a)(6). We nevertheless address her argument to the extent we can identify relevant portions based on our review of the record.

recollection and asked her a specific question about a paragraph therein. Stevens again objected, and the court overruled the objection. Stevens raised concerns that Jonov was "waving [the informed consent form] around in front of the jury," and sought a jury instruction to remedy it. The trial court declined to give a limiting instruction but reiterated that it was not admitting the informed consent form.

Subsequently, during cross-examination of Stevens's expert, Andrew, regarding medical records and metadata, Jonov asked whether there was a difference between "Exhibit 69 -- it's also Defendant's 104.21," a portion of the informed consent document laying out the risks of surgery, and "the signed informed consent form." Stevens objected, pointing out the informed consent form was the subject of the motion in limine, and the court sustained the objection. Jonov then asked whether Andrew was suggesting that "there was some cut and paste happening to add a discussion about informed consent into the operative note." Stevens again objected, and the trial court noted that Jonov was trying to differentiate "from the language in the top part of the document with the language in the second part of the document," and suggested Stevens focus on the document itself "rather than give it a different name."

We agree with Jonov that the court did not abuse its discretion in allowing the challenged questioning. At no point did the trial court admit the informed consent form or allow substantive testimony about it. It was used only to refresh Stevens's recollection when Jonov asked Stevens about risks that she knew of relating to the procedure. Further, any testimony from Stevens's expert, Andrew,

31

was limited to understanding the metadata of her medical records. Stevens does not establish that Jonov's questioning that broached the topic of informed consent violated the court's order on the motion in limine or otherwise constituted misconduct.

Moreover, even if there were misconduct, other than conclusory statements, Stevens fails to establish she was prejudiced by the misconduct, as she must to be entitled to a new trial. See Rookstool, 12 Wn. App. 2d at 307-08. Indeed, the trial court minimized any prejudice that could have resulted from references to informed consent. When Stevens objected to alleged violations of the motion in limine, while the trial court declined to issue a limiting instruction, it recessed the jury to discuss her objections, sustained other objections to questions referencing the informed consent form, and suggested Jonov's counsel use another term. The trial court did not abuse its discretion by denying Stevens's CR 59 motion for a new trial based on alleged misconduct.

C. Use of Video Deposition at Trial

Stevens also argues she is entitled to a new trial because Jonov used a clip from her deposition during closing argument that was not admitted as evidence at trial, without notice to her. She also complains that it was edited in a way that misled the jury[30] and that no curative instruction could have cured the impact, because the jury would likely view the clip "as just one further instance of [Stevens] attempting to limit evidence presented to the jury."

---

[30] This video is not in the record. Stevens admits that she did not object to the video or request a curative instruction. However, she identified the issue in her motion for a new trial.

Again, however, Stevens provides no citations to the record, nor does she provide any legal authority to support her argument, other than a conclusory assertion that this misconduct warrants a new trial based on "the cumulative error doctrine and CR 56(a)(2)." Without more, we cannot conclude the trial court's denial of her motion for new trial on this basis was an abuse of discretion.

CONCLUSION

We reverse the trial court's award of attorney fees to Stevens for discovery violations and otherwise affirm.

Chung, J.

WE CONCUR:

Coburn, J.

Mann, J.